## Hepburn v. City of Philadelphia, Appellant.

*Municipal corporation—Cities of the first class—Contracts—Act of June 1, 1885.*

The requirements of art. XIV of the act of June 1, 1885, to provide for the better government of cities of the first class, that all contracts relating to city affairs shall be in writing, signed and executed in the name of the city, by the officer authorized to make the same, etc., are mandatory and must be strictly pursued.

*Same—Highways—Negligence—Independent contractor.*

In an action against the city of Philadelphia for damages arising from a defect in the highway, the responsibility cannot be shifted on a contractor, unless his contract was, at the time of the accident, in writing and executed in accordance with the requirements of the act of June 1, 1885, although before the accident there was an advertisement, a bid by the contractor, and a letter to the contractor from the bureau in charge of the work stating that the contract had been awarded to him, and the contractor had actually commenced the work under the direction of the proper city officials; and although the contract was executed, and the other formal requirements complied with shortly after the accident.

Argued Jan. 6, 1892.   Appeal, No. 294, Jan. T., 1891, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1889, No. 96, on verdict for plaintiff, Frances E. Hepburn.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for personal injuries.

On the trial before FINLETTER, P. J., the following facts appeared: The plaintiff on the night of Sept. 2, 1888, walked across Arch street toward a car which she wished to board, but before reaching it fell into a ditch, and was injured.   Other facts appear by the opinion of the Supreme Court.   The letter of acceptance of the bid of the contractor, Kane, dated Aug. 1, 1888, and referred to in the opinion, was signed by the chief of

bureau, and stated that " the contract for ditching, refilling and repaving, in accordance with the specifications, . . . . was awarded you this day."

The court below charged in part as follows :

" The city is not responsible when the street, or the locality of the cause of accident is in charge of a contractor for a public or private purpose.

" If the city had entered into a contract for the digging of this trench, and the contractor had entered upon the work, the city was not responsible for anything which was done to the street, or for anything which occurred in consequence thereof, or in consequence of any neglect, either in doing the work, or in not giving notice by a light or otherwise of the dangerous condition of the street.

" Under such circumstances, the contractor was liable, and he alone.

[" It is for you to determine whether there was such a contractor, and whether or not he had completed his work and the city had resumed its control and authority over the street.] [1]

" The mere completion of the work by the contractor is not enough to impose liability upon the city. There must be, in addition, an acceptance of the work by the city, and a discharge of the contractor from possession of the locality of the work, and from liability for its condition and a resumption of control by the city. You will, therefore, carefully consider the evidence in reference to the contract, and the work to be done under it.

\*       \*       \*       \*       \*       \*       \*       \*

[" If, however, you are satisfied from the evidence that the city had resumed control, then the question arises, Were its agents, the authorities, negligent? Their negligence is the negligence of the defendant.] [2]

" Negligence is a neglect, or violation of duty, and where no duty is imposed, no negligence can arise.

" It is the duty of the city government to keep the streets, the roadbeds and the sidewalks in repair and free from dangerous obstructions, depressions, or holes.

" Any obstruction or hole, or want of repair which is dangerous, is evidence of negligence on the part of the city, and it becomes responsible for all injuries which may arise therefrom

under certain circumstances. It is not responsible, however, unless its agents, those who have charge of the streets, have notice of the cause of injury.

" This notice may be direct, that is, to the proper agent, by written or verbal information of the dangerous condition of the street. `It may also be indirect or presumptive notice, such as existence for some time, sufficient to give knowledge to those in charge, to give knowledge of its existence to the proper authorities. Notice to any of the agents of the city who would be likely to give those in charge of the streets notice, and also knowledge of the fact by such persons is evidence. In this case, notice was given to a police officer. This is not evidence of notice to the proper agents, but it is evidence that the police officer knew of the existence of the hole, or obstruction, or depression. It is also in evidence that this ditch was dug for the purpose of laying gas pipe, and that work was completed or finished on Saturday preceding the accident—Sunday. [ [From all these matters the jury are called upon to decide whether or not the proper authorities should have known of the condition of the street.] [4]

" If the jury find from this evidence that the proper agents of the city should have had this knowledge, then they had sufficient notice, and should have guarded this break in the street, or should have had a light or other means to give warning of its existence placed there, and if this was not done, the defendant, the city, was negligent.] [3]

" The importance which the jury should give to witnesses will always depend upon the intelligence they evince, their means of observation, and a desire to tell what they know, or think they know, without prejudice or passion.

" In all cases you may expect conflicting, or apparently conflicting testimony. It is the duty of the jury to ascertain the truth from the reliable testimony in the cause.

" There is a very decided difference of opinion between the witnesses as to the condition of the locality of the accident and the manner in which it occurred, and the appearance of the plaintiff at the time.

[" So far as the liability of the defendant is concerned, it is of no importance, no consequence, where the exact truth lies in this conflict of evidence.] [5]

["The city is liable, no matter what the exact condition of the street was, if it were out of repair, and that want of repair caused the injury.] [6]

" The exact condition of the trench is important, so far as it may have effected the extent of the injuries, and their subsequent consequences. The injuries themselves and their consequences are likely to depend upon the depth and width of the trench and its conditions."

*Errors assigned* were (1–6) the portions of the charge as above in brackets, quoting them ; (7, 8) the refusal of defendant's points, quoted in the opinion ; (9) the entry of judgment for the plaintiff.

*Abraham L. Beitler*, with him *Leonard Finletter* and *Charles F. Warwick*, city solicitor, for appellant.

*F. Carroll Brewster*, with him *Bradbury Bedell*, for appellee. —The city had not made any contract at the time of the accident: Art. XIV, act of June 1, 1885 ; Dillon on Mun. Corp., 4th ed. §§ 89, 443 and 449 ; Angell & Ames on Corp., 11th ed. § 253 ; Bank v. Dandridge, 12 Wheat. 64 ; Head v. Providence Ins. Co., 2 Cranch, 127 ; British Ass. Co. v. Browne, 12 C. B. 723.

OPINION BY MR. JUSTICE STERRETT, May 23, 1892 :

The evidence submitted to the jury was quite sufficient to warrant them in finding that the negligence of those engaged in digging the ditch, etc., on Arch street, was the sole cause of the injury suffered by the beneficial plaintiff in September, 1888. By necessary implication, the verdict in her favor was predicated of that finding of fact.

In view of all the circumstances disclosed by the evidence, the principle, respondeat superior, was applicable, and, prima facie, the city was liable, unless it was shown that the work referred to was legally let to an independent contractor, under whose supervision and control it was being prosecuted when plaintiff was injured. Evidence was accordingly introduced by defendant for the purpose of showing that proposals for digging the trench, filling in the same, repaving, etc., after the gas pipe was laid, were invited, and contract therefor was awarded to James Kane, the lowest and best bidder, in Aug., 1888. In that connection, the written contract between the city and Kane,

dated Sept. 5, 1888, three days after plaintiff was injured, was given in evidence under objection. Predicated of that and other evidence, introduced for the purpose of showing that Kane, and not the city, was in actual charge of the work, etc., the following points for charge were presented:

" 1. If the undisputed evidence in this case shows that the trench, into which the plaintiff fell, was dug by James Kane, under contract awarded to him on Aug. 1, 1888, the negligence, if any, in this case, was his and not the city's, and he, and not the city, is responsible therefor, and the verdict must be for the defendant."

" 2. That under all the evidence in this case, the verdict must be for defendant."

The refusal of these cardinal propositions is complained of in the seventh and eighth specifications of error respectively.

If there had been any competent evidence to prove that the prima facie liability of the city as principal had been shifted, by contract or otherwise, to Kane as an independent contractor, these points should have been affirmed; but there was no such evidence. In view of the undisputed facts, in connection with the imperative requirements of art. XIV of the city charter, the affirmance of either of the points would have been manifest error. That article declares: " All contracts relating to city affairs shall be in writing, signed and executed in the name of the city, by the officer authorized to make the same, after due notice, and, in cases not otherwise directed by law or ordinance, such contracts shall be made and entered into by the mayor. No contracts shall be entered into or executed directly by the city councils or their committees, but some officer shall be designated by ordinance to enter into and execute the same. All contracts shall be countersigned by the controller, and filed and registered by number, date and contents, in the mayor's office, and attested copies furnished to the controller, and to the department charged with the work: " Act June 1, 1885, P. L. 51.

These clear and explicit requirements of the city's organic law are not merely directory. On principle, as well as authority, they are mandatory. To hold otherwise would defeat the very object that the legislature had in view in thus specifically prescribing the manner in which all contracts relating to city affairs shall be executed, and expose the public funds to raids

of every conceivable form.   When the mode in which contracts by corporations shall be made and evidenced " is specially and plainly prescribed and limited, that mode is exclusive and must be pursued:" Dillon on Mun. Corp., 4th ed. § 449.   Moreover, our act of March 21, 1806, declares that, "in all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of assembly . . . . the directions of the said acts shall be strictly pursued."   Again, " where the whole aim and object of the legislature would be plainly defeated, if the command to do the thing in a particular manner, did not imply a prohibition to do it in any other, no doubt can be entertained as to the intention:" Endlich on Statutes, § 431. It is unnecessary to cite other authorities on the subject. They are all to the same effect.   We have no doubt that the requirements of the organic act, above quoted, are mandatory, and must be strictly pursued.

The undisputed evidence is, that the work on the street was commenced by Kane, under direction of the proper city officials, in Aug. 1888.   The injury of which plaintiff complains was received on Sept. 2d.   The paper offered as a contract between the city and Kane, for the purpose of showing that the latter was an independent contractor, was not executed until Sept. 5th, and was not countersigned until the 13th of same month.   Kane's bond to the city was given Sept. 5th, and entered up on the 27th. When plaintiff was injured, and her cause of action arose, the relation of independent contractor between the city and Kane had not been created.   There was no independent contractor in the case.   The papers referred to, the advertisement, the bid, and the letter of acceptance, set forth the terms upon which the city was willing to enter into a contract with him, but neither singly nor altogether do they constitute a valid contract, nor in fact any contract.   They are merely negotiations preparatory thereto.   The contemplated contract was not executed or evidenced in the only way in which it could become effective to make Kane an independent contractor, until after the accident. At that time the relation of independent contractor, between him and the city, had no existence.   The defendant entirely failed to show that its prima facie liability as principal had been shifted, by contract or otherwise, to Kane or anyone else, and hence there was no error in refusing to affirm defendant's points.

This view of the case necessarily requires an affirmance of the judgment. All the controverted facts upon which the right of the plaintiff to recover depended, have been settled in her favor by the verdict. Further consideration of the questions presented by the record is unnecessary. There is no error therein of which the defendant has any just reason to complain.

Judgment affirmed.

May 27, 1892, petition by plaintiff for reargument, counsel contending as follows : The contract between the city and Kane was completed August 1, 1888, when the letter advising him of the awarding of the contract was sent to him : City of Phila. v. Ogden, S. C. Pa., Jan. T., 1885, No. 118 ; Campbell v. City, 10 W. N. C. 221 ; Kerr v. City, 8 Phila. 292.

While the act of June 1, 1885, is mandatory upon the city in reference to its contracts, the rights of third parties are not affected by the mandate of the legislature requiring the engagements of the municipality to be made in a particular way.

June 1, 1892, PER CURIAM : Reargument refused.