# E. M. Ayers *v.* the City of New Castle, Appellant.

*Municipal contract—Interference by the city—Rescission—Claim for extra work, etc.*

A contractor who has a contract with the city to grade, pave, etc., a street cannot recover, after completing the contract, for extra work and damages incident to and resulting from municipal permission to a street railway company to lay its tracks on said street.

Such interference with the performance by the plaintiff of his contract might have been set up as a breach ; he might have retired from further attempt at performance and recovered for work done and perhaps damages for the breach ; he cannot by giving notice of intention to claim damages proceed under the new conditions and recover on a quantum meruit. Neither the city nor its officers have any power to sanction such proceeding.

*Municipal contract—Authority of city engineer to pass extra work.*

A provision in a municipal contract for notice to be given of claim for damages and for doing extra work by the contractor on notice from the city engineer does not comprehend damages and extra work occasioned by

an intervention by the city's own act but applies only to incidental and trifling items of increased cost which must be passed upon by the engineer promptly and with authority during the progress of the work.

Argued May 10, 1899.   Appeal, No. 221, April T., 1899, by defendant, from judgment of C. P. Lawrence Co., June T., 1897, No. 38, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Reversed.   Opinion by W. W. PORTER, J.

Assumpsit.   Before WALLACE, P. J.

It appears from the record and the evidence that this was an action brought to recover on a municipal contract for street grading and paving for extra work and damages performed and incurred by plaintiff by reason of the action of defendant in permitting by ordinance a street railway to lay its tracks on the avenue pending the prosecution by plaintiff of the work under the contract.

The court refused defendant's only point, which was as follows:

[That under the evidence defendant is not liable to the plaintiff for any damages or for any extra work, and that the verdict should be for the defendant.] [6]

The trial judge also affirmed plaintiff's fourth point, which was as follows:

[Plaintiff having contracted without reference to any street car line and without notice that any line was to be built on the street, the construction of the street railway under and by virtue of the permission given it by the city ordinance approved August 1, 1896, was an interference by the city with the work to be done under the contract between the plaintiff and defendant.] [5]

The court charged the jury, inter alia, as follows:

[We say to you as a matter of law before proceeding to view their side of the case that if the city permitted by its ordinance the street car company to go upon that street, and directed what should be done, and thereby changed the contract which Mr. Ayers, the plaintiff, had made and put additional work upon the plaintiff, then defendant would be liable for whatever additional work the plaintiff had, subject, however, to the deduc-

tion of whatever benefit, if any, the plaintiff received by the entry of the street car company upon said street.] [7]

Verdict and judgment for plaintiff for $946.35.    Defendant appealed.

*Errors assigned* among others were (6) refusal of defendant's point, reciting same.    (5) Affirming plaintiff's fourth point, reciting same.    (7) To portions of the general charge, reciting same.

*James A. Gardner*, city solicitor, with him *D. B. & L. T. Kurtz*, for appellant.—The fact of giving consent does not make the city responsible for any damages which may be caused by the street railway company to private parties: 2 Dil. Munc. Corp. (4th ed.) sec. 710; 23 Am. & Eng. Ency. of Law, 1096, 1097, and notes.

The street railway is for public use and its rights are exercisable as rights of eminent domain: 23 Am. & Eng. Ency. of Law, 933, 944; Booth, Street Railways, secs. 103–106; Homestead Street Railway Co. v. Railway, 166 Pa. 162, 174.

When Mr. Ayers entered upon his work he had a vested contractual right, subject, however, to the right of eminent domain. Had the street railway company taken any of his materials, the company alone would be liable therefor.    If the company in the exercise of the grants given it by the state entered upon the street and interfered with the plaintiff's said vested contractual rights, the company alone should make the compensation and respond in the damages suffered by the plaintiff.

The contract with the city provided for the making of changes, but no change of contract was ever made between Mr. Ayers and the city.    The specifications of the contract were sufficient, so that all this interference was by an outside party.    The street railway company had power to interfere with the plaintiff, not by reason of any authority conferred by the city, for the city could not give a power that would authorize an interference with plaintiff's rights, but the state could and did in this case. "The municipal consent of itself can confer no right.    The municipality has no power to confer the franchise.    But it is the franchise, and that alone, which gives the legal right to build the railway.    When the franchise is granted authority is conferred to lay the track and it can then truly be said that the

laying of the track is authorized. Municipal consent is only essential to the execution of the authority, not at all to its creation: " Homestead Street Ry. v. Ry., 166 Pa. 162, 171; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1, 23.

*J. Norman Martin,* for appellee.—It matters not what a street railway company could have done under a special charter. Const. 1874, art. 17, sec. 9, and Act of May 14, 1889, P. L. 211, must be read into and form part of the charter of the New Castle Electric Street Railway Company. Whether for police purposes or not the fact remains that municipal consent is a prerequisite to the building of the railway on a particular street. While the city and the street railway company get their power from the same source and authority, the city is higher in this, that it can give or withhold from the street railway company the right to exercise its charter powers.

" Where there is a wrong there is a remedy." The plaintiff was damaged. Defendant undertakes to hide behind the street railway company. In this appellant says: " I contracted with plaintiff; I gave my consent and thereby enabled the street railway company to go upon the street; it could not have gone there without my consent; I knew plaintiff would be damaged and therefore I took indemnity from the company; plaintiff has been damaged; because I am a municipality I am absolved from the rules of good faith binding individuals in their contracts; I keep my indemnity, but will not pay plaintiff; he must sue the railway company."

The city is governed by the same rules as an individual. As between individuals certainly, this would be considered an improper interference, and damages would be awarded to the extent of the loss which was the necessary consequence of the suspension: United States v. Smith, 94 U. S. 214; Clark's Case, 73 U. S. 543.

Defendant prevented and hindered plaintiff from performing his contract without doing the extra work made necessary by defendant's conduct. " An innocent contractor should not be made to suffer for these contingencies: " United States v. Peck, 102 U. S. 64.

OPINION BY WILLIAM W. PORTER, J., July 28, 1899:
On May 12, 1896, the plaintiff entered into a contract with

the defendant, a city of the third class, to furnish the materials and perform the work necessary in the grading, paving, and curbing of a part of Highland avenue in the said city according to the plans, specifications, conditions, notice to bidders, proposals, and ordinances, and street committee report, copies of which were attached to and formed a part of the contract.

The plaintiff was engaged in the work on August 1, 1896, when the councils of the city defendant passed an ordinance giving consent to the New Castle Electric Railway Company to lay tracks on Highland avenue.

The railway company thereupon began to lay the tracks and, as the plaintiff contends, thereby seriously obstructed, delayed, and rendered more expensive his work upon the street. For this he claims that the city is liable as well as for certain extra work, required by reason of the laying of the said tracks, performed pursuant to a written notice from the city engineer.

Assuming the act of the city in giving consent to the construction of the railway to be a direct interference with the performance, by the plaintiff, of his contract, the latter might have set it up as a breach; retired from further attempt at performance; recovered for the work done and perhaps damages for the breach. His other course was to proceed with his contract under the new conditions created by the act of the city, and by thus accepting them put himself in position to demand the consideration to be paid for full performance.

He did not rescind the contract. He went forward, but, at the same time, gave notice that he proposed to hold the city liable for damages and for the extra work required to be done by the written order of the city engineer.

Liability on the part of the city for this claim was not in contemplation when the original contract was made. It was created, if at all, by the act of the city in passing an ordinance authorizing the railway company to enter upon the street, then in course of improvement. The change in the contractual obligation was, as the plaintiff shows, material. By the very form of the ordinance giving consent to the railway, it is evident that the interference was considered likely to cause an increased cost to the contractor for which the city stipulated the railway company should pay. The change in the work and in the liability to pay for it, is as fundamental, by the plaintiff's own showing, as if

the city had, subsequent to the execution of the contract, passed an ordinance, changing the grade. If this had been done and the plaintiff had then gone on with his contract at the new grade he could not have recovered the additional expense, even though the city engineer had given him assurance that he would be paid for it by the city. This was settled by Addis v. City of Pittsburg, 85 Pa. 379. Upon just such facts, Mr. Justice SHARSWOOD says: " The plaintiff would clearly have had the right to rescind the contract, recover for the work he had done, and it may be damages for the breach. The proper course for the city undoubtedly was to advertise and relet the work. But the plaintiff preferred to go on with the work under his contract. He relied, it was offered to prove, on the assurance of the city engineer and the street committee that he should be compensated for the extra work. But the city itself, much less any of its subordinate officers or committee, had no power to make an agreement to pay for such work on the rule of a quantum meruit."

Thus the plaintiff, in this case, would be unentitled even had he the assurance of payment from the city officials. This results, as said by Mr. Justice SHARSWOOD, from the necessity that requires "all municipal work of this character to be done by the lowest and best bidder."

It may, however, be said that in the contract before us there is provision made for notice to be given of claim for damages and for the doing of extra work by the contractor on notice from the city engineer. These clauses do not comprehend damages or extra work occasioned (as alleged here) by an intervention by the city's own act. There is, in the municipal officer superintending a public work, done under a contract legally executed, a certain margin of discretion in directing the work. Conditions arise which were not in contemplation or in the knowledge of the contracting parties which require incidental changes and involve trifling items of increased cost which must be passed upon by the municipal officer promptly and with authority during the progress of the work. Such are the subjects covered by the clauses of this contract. They do not purport to extend to important changes or to the result of interference by municipal action and if so intended they are not sustainable under the law. Were it otherwise, a contract might

be lawfully made by the city for one thing and, through the discretionary powers given an engineer, be held for a work wholly different in cost and construction and beyond the design submitted to bidders as required by law.

In this view of the case, the fact that the city stipulated that the railway company should, as a condition to the laying of its tracks on Highland avenue, assume any increased cost to the contractor, cannot be construed to be an admission of liability to the contractor so as to aid him in his claim. The question of the liability of the railway company to the contractor, for interference with his contractual rights, in the exercise of its powers derived from the state, do not properly come before us in this inquiry, although adverted to in argument.

Our judgment in this case is based upon the authority of Addis v. City of Pittsburg, supra, which has not been overruled by the case of The City of Harrisburg v. Saylor, 87 Pa. 216. We believe the former to be a binding precedent directly in point but which, while sound in principle, is in the present case, seemingly harsh in application.

The sixth assignment of error is sustained and the judgment is reversed.