JOHNSTON v. CITY OF PHILADELPHIA.

(Circuit Court, E. D. Pennsylvania.  January 22, 1902.)

No. 5.

1. MUNICIPAL CONTRACTS—EXECUTION.

A contract with a city for work on a school building is void. and the contractor doing work thereunder is a volunteer, it not having been countersigned by the .controller, and filed and registered, as required by Act June 1, 1885 (P. L. .51) art. 14, and not having designated any appropriation on which it was founded, as required by article 7, § 1, subd. 7.

2. SAME.

Failure of a contract with a city for completing work on a building to be countersigned by the controller and to designate an appropriation on which it is founded, as required by Act June 1, 1885, art. 14, and Id. art. 7, § 1, subd. 7, is not cured or excused by the.fact that the contractor's bid for the entire work had been accepted by the city, and in a prior, duly-executed contract with him for part of the work it was recited that he contracted and agreed, when requested so to do, to enter into a contract to finish the building, subject to a further appropriation of a certain sum, being the balance required to pay for the remaining work.

Motion for Judgment on Reserved Point N. O. V.

Frederick A. Sobernheimer and John G. Johnson, for plaintiff.

J. W. Catharine, Asst. City Sol., Ernest Lowengrund, Asst. City Sol., and John L. Kinsey, City Sol., for defendant.

J. B. McPHERSON, District Judge.  The facts upon which the reserved question arises are not in dispute, and appear mainly in the written evidence.  They are briefly these:  In July, 1896, the board of education of the city of Philadelphia asked for proposals to finish the new building for the Boys' High School, upon which some work had already been done under a separate contract.  Upon July 7 the plaintiff put in a bid, offering to finish the building in accordance with the plans and specifications for certain specified sums.  On September 8 the committee on property of the board reported in favor of awarding the contract to the plaintiff for the sum of $324,405.50, and upon the same day the board adopted the report of the committee.  At that time, no money had been appropriated by councils for the purpose of finishing the building, but in spite of that fact Johnston went on and did certain work upon the building, amounting to $100,000.  On July 14, 1897, councils appropriated $100,000 for the purpose of paying for this work; and on September 8 of that year a contract was entered into between the plaintiff and the city, in which he agreed to

"Furnish and deliver all the materials and perform all the labor requisite in erecting and building the granite portion of the tower, and in installing and placing in position certain iron work, air ducts, area walls, metal ceilings, and mill work, including painting and glazing, and in doing such concreting, plastering, tiling, painting, and carpenter work, including the flooring of the fifth floor, as may be directed by the architect and supervisor of the board of public education, under the authority of the committee on property of said board, being appurtenant and necessary to the completion of the main building of the new high school for boys.  *  *  *  Said work to be performed in strict and exact accordance with the detailed drawings

and plans on file in the office of said board and the specifications hereto attached, which said plans and specifications are hereby made a part of this agreement as fully to all intents and purposes as though herein set out at length, and as authorized by ordinance of councils of said city approved July 14, 1897."

This is the ordinance already referred to that appropriated $100,000 toward the completion of the building; and the fact that the contract was limited to this part of the work further appears from a later clause of the agreement in these words:

"It is further distinctly understood and agreed that the total amount to be paid for the materials and supplies to be furnished and work done under this contract shall in no event exceed the sum of $100,000."

This money was duly paid to the plaintiff, and some time thereafter, again without contract or appropriation, he did further work upon the building, amounting to $144,500. This work was done during the years 1897 and 1898, and upon December 28 of the latter year councils appropriated, to pay for this second installment, and for one or two other small items, the sum of $150,000. Thereupon a second contract was entered into on January 13, 1899, containing the same provisions as are found in the first contract, with one or two unimportant differences. The amount to be paid under the second agreement was expressly limited to the sum of $144,500, and this sum was in due course paid to the plaintiff. He again went forward with the work, once more without contract or appropriation, and (with some exceptions) did what was necessary to carry out his bid. A third contract was then drawn up, dated June 30, 1899, in which the plaintiff agreed

"To furnish all the materials and perform all the labor necessary for the erection and completion of the addition to the tower, rebuilding the transit room, and making alterations, including gratings, bars, and such other work as may be required for the completion of the building of the new high school for boys."

These, apparently, were the matters comprised in the final installment of the operation. The amount specified in the contract to be paid was the remainder of his bid, namely, $90,762.50. This sum is the subject of the present suit. The work called for by the plaintiff's bid has been finished, except certain items, for which an allowance has been made by the verdict, and the building has been taken possession of and is now being used by the city.

The defense is that no legally binding contract was ever executed for the third installment of the work, and therefore that under the statutes of Pennsylvania, the ordinances of the city, and the decisions of the courts, the plaintiff was a mere volunteer, and cannot recover. Further facts bearing upon this question are as follows: The paper dated June 30, 1899, which was signed by the plaintiff, was not signed by the mayor on behalf of the city, but purports to be approved by the chairman of the committee on finance on July 6, 1899, who was acting in reliance upon a resolution of select and common councils passed on June 15, 1899, that authorized the chairman of that committee to approve contracts and sureties during the summer vacation. The paper was not countersigned by the con-

troller, nor filed and registered by number and date and contents in the mayor's office, and an attested copy was not furnished to the controller or to the department charged with the work. The act of June 1, 1885 (P. L. 51), relating to the city of Philadelphia, provides in article 14, § 1, as follows:

"All contracts relating to city affairs shall be in writing, signed and executed in the name of the city by the officer authorized to make the same after due notice, and, in cases not otherwise directed by law or ordinance, such contracts shall be made and entered into by the mayor. No contract shall be entered into or executed directly by the city councils or their committees, but some officer shall be designated by ordinance to enter into and execute the same. All contracts shall be countersigned by the controller and filed and registered by number, date and contents in the mayor's office, and attested copies furnished to the controller and to the department charged with the work."

In article 7, § 1, subd. 7 (page 46), the following provision will be found:

"Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded, and shall be numbered by the controller in the order of its date and charged as numbered against such item, and so certified by him before it shall take effect as a contract, and shall not be payable out of any other fund, and if he shall certify any contract in excess of the appropriation properly applicable thereto, the city shall not be liable for such excess, but the controller and his sureties shall be liable in damages for an amount not exceeding such excess, which may be recovered in an action on the case for negligence by the contracting party aggrieved."

The requirements thus specified were also not complied with in the paper now being considered. It was a proposed contract involving an appropriation of money, but it did not designate the item of appropriation upon which it was founded; neither was it numbered, or charged, or certified by the controller.

It seems clear to me that because of the foregoing defects the paper in controversy never took effect as a contract (to use the words of the act). It would be a waste of time to discuss this proposition, because the precise question has already been several times decided both by the supreme court and by the superior court of the state. The act of 1889 relating to cities of the third class contains a provision (article 9, § 5) concerning the duty of the controller to certify contracts that differs only verbally from article 7 of the act of 1885. For present purposes the meaning is identical. In City of Erie v. A Piece of Land on Eighteenth St., 176 Pa. 478, 35 Atl. 136, the supreme court declared in direct and positive terms that:

"This requirement [of the act of 1889] is a condition precedent to the legal efficacy of the contract, and without it there is no efficacious force in the attempted contract as to any one. As this requirement is entirely absent from the controller's certificate, the conclusion follows that there never was a lawful contract for the paving in question, and hence there can be no recovery. * * * It results that the paving company has no contract upon which it can recover, and it is therefore to be regarded as a mere volunteer, having no lawful claim against this defendant."

This decision was followed in City of Harrisburg v. Shepler, 7 Pa. Super. Ct. 491, affirmed by the supreme court in 190 Pa. 374, 42 Atl. 893, and also in Same v. Mish, 14 Pa. Super. Ct. 496. Moreover, article 14 of the act of 1885 relating to Philadelphia was itself before

the supreme court in Hepburn v. City of Philadelphia, 149 Pa. 335, 24 Atl. 279, and it was there declared that:

"These clear and explicit requirements of the city's organic law are not merely directory. On principle as well as authority they are mandatory. To hold otherwise would defeat the very object that the legislature had in view in thus specifically describing the manner in which all contracts relating to city affairs shall be executed, and expose the public funds to raids of every conceivable form. * * * We have no doubt that the requirements of the organic act above quoted are mandatory, and must be strictly pursued. * * * When plaintiff was injured, and her cause of action arose, the relation of independent contractor between the city and Kane had not been created. There was no independent contractor in the case. The papers referred to—the advertisement, the bid, and the letter of acceptance—set forth the terms upon which the city was willing to enter into a contract with him; but neither singly nor altogether do they constitute a valid contract, nor in fact any contract. They are merely negotiations preparatory thereto. The contemplated contract was not executed or evidenced in the only way in which it could become effective to make Kane an independent contractor until after the accident."

This language applies with equal force to the foregoing requirements of article 7.

It is, I think, conceded, but, at all events, it cannot be successfully denied, that, if these decisions apply, the paper of June 30, 1899, never took effect as a contract, and therefore the city was never bound thereby. To avoid the force of these authorities, the plaintiff relies upon the following clause, contained in the first and second contracts, both of which were legally executed and certified:

"The said party of the second part further contracts and agrees that he will, when requested so to do, enter into a contract with the said party of the first part to finish and complete the entire work necessary to fully complete and finish the said building in accordance with the said plans and specifications, for the total of $324,405.50, subject to a further appropriation by said councils of the sum of [in the first contract, $224,405.50, and in the second contract, $90,762.50], that being the balance required to pay for the said work remaining unfinished."

The argument is that, because these two lawfully executed and certified contracts contained this provision, the plaintiff was relieved from the necessity of entering into another formal contract, and that no further signing by the proper officer of the city or certification by the controller was required. To this argument I cannot agree. The very language of the provision relied upon by the plaintiff seems to me to be fatal. He agrees to "enter into a contract" to finish the entire work, subject to a further appropriation by councils, and these words contemplate action in the future. The plaintiff's bid had been accepted, but, as was said in Hepburn v. City of Philadelphia, this was not the contract. The bid and acceptance merely set forth the terms upon which the city was willing to enter into a contract, but they did not constitute a valid contract, nor in fact any contract. Neither can the first and second contracts be so construed as to constitute a contract for the whole work. They are expressly limited to parts only; and, moreover, they could not lawfully cover more of the work than such portions as had already been provided for by appropriations made by councils. It must be admitted that there is an apparent hardship in the conclusion that the plaintiff has put his

labor and materials into a building which the city is using but declines to pay for. Nevertheless, the positive command of the statute must be enforced. The plaintiff took all the risks that were visible in the transaction. He was willing to do the work without a contract and without an appropriation, trusting to the disposition of councils to pay for it afterwards, and to the approval of the proper municipal authorities; and, now that the risk has fallen out against him, while it may be regretted that he has lost a large sum of money, it can only be said that he has lost it by his own folly.

Judgment will be entered for the defendant upon the reserved point, notwithstanding the verdict.