# Philadelphia Company *v.* City of Pittsburgh, Appellant.

*Contracts—Illegality—Municipalities—City of second class—Gas companies—Absence of advertisement or competitive bidding—Acts of March 7, 1901, P. L. 20, and June 20, 1901, P. L. 586—Judgment for defendant n. o. v.*

1. The provision of the Charter Act of March 7, 1901, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586, relating to cities of the second class, that "all contracts relating to city affairs shall be let to the lowest responsible bidder after reasonable notice," is not merely directory but mandatory and unless strictly complied with no liability is imposed upon the municipality.

2. A contract entered into between a city of the second class and a gas company for the supply of gas for a municipal hospital is illegal and void when awarded without previous advertisement and

without competitive bidding where there were other companies furnishing gas in such city.

3. In such case the fact that the other companies in order to have fulfilled such contract would have had to lay pipe some distance, did not obviate the necessity of advertisement and competitive bidding, in the letting of the contract.

Argued Feb. 29, 1916.    Appeal, No. 14, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., Oct T., 1912, No. 2035, for plaintiff in case of The Philadelphia Company, a corporation, v. The City of Pittsburgh, a municipal corporation.    Before Brown, C. J., Mestrezat, Stewart, Moschzisker and Walling, JJ. Reversed.

Assumpsit on written contract for gas furnished a municipal hospital.    Before Reid, J.

The facts appear by the opinion of the Supreme Court. See Philadelphia Co. v. Pittsburgh, 247 Pa. 542.

Verdict for plaintiff for $4,476.86, and judgment thereon.    Defendant appealed.

*Error assigned,* among others, was in refusing to direct a verdict for defendant and in refusing defendant's motion for judgment n. o. v.

*B. J. Jarrett,* with him *Charles A. O'Brien* and *Hermann F. Ruoff,* for appellant.—Where the power of a municipality to enter into a contract is limited to a certain manner by statute, any other manner of entering into a contract is thereby forbidden and no liability can arise against the municipality for benefits received within the scope of such statute and in violation thereof: McCormick v. City of Niles, 27 L. R. A. (N. S.) 1117; La France Fire-Engine Co. v. Syracuse, 68 N. Y. Supp. 894; Bigler v. Mayor of N. Y., et al., 5 Abbott's N. C. (N. Y.) 51; Trustees of Bellview v. Hohn, 82 Ky. 1.

The contract not having been let pursuant to advertisement and competitive bidding as required by the

Charter Act of March 7, 1901, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586, is void and imposes no liability on the municipality.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellee.—The fact that there was no gas company with lines near the hospital at the date of awarding the contract made competitive bidding and advertising unnecessary and does not impair the validity of the contract: City of Hartford v. Hartford Elec. Light Co., et al., 65 Conn. 324 (32 Atl. Repr. 925) ; Harlem Gas Light Co. v. New York, 33 N. Y. 309; Silsby Manfg. Co. v. Allentown, 153 Pa. 319.

OPINION BY MR. JUSTICE MESTREZAT, March 20, 1916:

This is an action of assumpsit brought by the Philadelphia Company against the City of Pittsburgh to recover for natural gas furnished the Municipal Hospital at Pittsburgh from February 27, 1911, to July 27, 1912, under an alleged contract, dated April 19, 1904, between the plaintiff and the "Department of Public Safety, Municipal Hospital, City of Pittsburgh," by which the Philadelphia Company for the stipulated rates per thousand cubic feet agreed to supply natural gas for fuel purposes to the hospital. The contract was for one day and to continue in force after the expiration of the term until either party gave fifteen days' notice of a desire to terminate it. The rates were subject to change by the Philadelphia Company on fifteen days' written notice. The agreement was executed on behalf of the company by its general contracting agent, and for the city by the mayor and director of the department of public safety. There was a prior contract, dated December 29, 1897, with like provisions as to rates and limitations, between the Philadelphia Company and the City Bureau of Health, and under the two contracts natural gas has since been continuously supplied to the hospital. The city paid at the stipulated rates until January 30, 1911, when it declined

to make further payments for the gas furnished under the present contract on the ground that the company was required to deliver gas free of cost to the hospital under the provisions of the franchise ordinance of November 13, 1884, granting the plaintiff's/ predecessor, George Westinghouse, Jr., the right to lay pipes through the streets of the city for the distribution of natural gas. The ordinance provided that as a consideration for the privileges granted by it, Westinghouse should furnish to the city "free of cost and expense, all the natural gas necessary for fuel for buildings of the police, fire, markets and city property departments."

The Philadelphia Company denied that it was required to supply gas free for the hospital as a municipal building under the ordinance of 1884, and instituted this suit to enforce payment for the gas furnished by it under the contract of 1904. The city defended on the grounds: (1) that it was exempt from payment by the terms of the franchise ordinance of 1884, (2) that the contract was not executed as required by law, and (3) that the contract was not let on competitive bidding after due advertisement. The case was tried and resulted in a verdict for the plaintiff, which was set aside, and judgment was entered for the defendant. The plaintiff company appealed. When the case was here before on the company's appeal, 247 Pa. 542, it was thought, as appears by the opinion of our late Brother ELKIN, that the controlling question was whether under the ordinance of 1884 the Philadelphia Company was required to furnish free gas to the hospital, and that the question could not be determined until there was a fuller development of the facts. "We deem it necessary, therefore," says the opinion, "to reverse the judgment in order that the parties may have the opportunity of proving the facts upon which they rely to sustain their respective contentions." The merits of the case were not decided, the court saying: "We will not undertake now to pass upon the merits of any of the questions suggested by this appeal."

The case was tried again and the jury·found for the plaintiff. The court declined to set aside the verdict and denied the motions of the defendant for a new trial and for judgment non obstante veredicto. The city has appealed, and the assignments allege error in the admission of testimony, in portions of the charge, in answers to points for charge, and in entering judgment on the verdict and refusing judgment non obstante veredicto for the defendant. We need not discuss or determine the questions raised by the several assignments, except the nineteenth, twentieth and twenty-first, as we are all of the opinion that as the contract to supply gas for the hospital was awarded without previous advertisement and without competitive bidding, it was illegal and void, and, therefore, will not support an action against the city for the gas furnished by the plaintiff company for fuel purposes to the hospital.

The City of Pittsburgh is a city of the second class and, therefore, subject to the provisions of the Charter Act of March 7, 1901, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586. The latter act, Section 11, provides inter alia as follows: "All contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice. When the contract exceeds two hundred and fifty dollars, such notice shall be by advertisement; when less than that amount, advertisement may be dispensed with. Every contract shall be let by the (mayor) and head of the department. All bids shall be filed with the city controller, and shall be opened publicly by the (mayor) and head of the proper department, at a time and place to be designated in the advertisement or notice to bidders, and the figures stated to those present."

We have uniformly, held in numerous decisions, and it may now be regarded as the general rule in this State, that where the charter act of a city prescribes the method or formal mode of making municipal contracts, it must be observed, and if not executed in conformity therewith

a contract is not enforceable against the municipality. We have held that such requirements in the organic law of a city are mandatory, and that liability on a muncipal contract can only be imposed by a compliance with the method prescribed by the statute. See Addis v. Pittsburgh, 85 Pa. 379; Hepburn v. Philadelphia, 149 Pa. 335; McManus v. Philadelphia, 201 Pa. 619; Smart v. Philadelphia, 205 Pa. 329; Press Publishing Co. v. Pittsburgh, 207 Pa. 623; and Carpenter v. Yeadon Boro., 208 Pa. 396. In the last cited case, it was said (p. 399): "The authority of a municipal body to legislate or to contract is conferred by the lawmaking power of the State, hence it must be exercised in the manner provided in the statute conferring it. A municipal corporation is simply the agent or instrumentality of the state to administer local government and to exercise certain powers and to perform certain duties within defined territorial limits in conformity with the method and to the extent delegated in the legislation creating and applicable to the corporation. Its contractual powers are derived from the same source and are circumscribed by the same limitations." In Hepburn v. Philadelphia, 149 Pa. 335, STERRETT, J., discussing the provisions of a city charter relating to municipal contracts, says (p. 339): "These clear and explicit requirements of the city's organic law are not merely directory. On principle, as well as authority, they are mandatory. To hold otherwise would defeat the very object that the legislature had in view in thus specifically prescribing the manner in which all contracts relating to city affairs shall be executed, and expose the public funds to raids of every conceivable form. When the mode in which contracts by corporations shall be made and evidenced 'is specially and plainly prescribed and limited, that mode is exclusive and must be pursued': Dillon on Mun. Corp., 4th Ed., Section 449."

It appears by the evidence that there was no advertisement for proposals nor competitive bidding for sup-

plying gas to the hospital.   The appellee's counsel contend that the city's officials were not required to comply with the provisions of the statute in this respect as there was no rival company or available competitor which could have reasonably been expected, under the circumstances, to bid for the contract and furnish the gas.  The learned trial judge submitted the question to the jury, instructing them that if they found that it was reasonably to be expected that the rival companies, or either of them, would lay their pipes to the hospital building for the purpose of supplying it with gas, the jury might determine that the contract should have been made in the manner required by the charter, but if they should find that it was unreasonable, under the circumstances, to expect the rival companies to lay their pipes to the hospital and compete with the plaintiff company as to rates, it was not necessary that the requirement for advertising and competitive bidding should be complied with.

It may be conceded for the purpose of disposing of this appeal that there are cases where a compliance with the statutory requirement for advertising and competitive bidding would not avail the city and, therefore, might be dispensed with in letting a contract for municipal supplies.   If, as was held by HATCH, J., in Gleason v. Dalton, et al., 28 App. Div. (N. Y.) 555, 559-560, the subject-matter of the contract is such that competitive proposals would be unavailing, or would not produce any advantage to the city, or the selection of the supplies must be made after a present inspection and test, or where the thing to be obtained is a monopoly, or the requirement is of personal skill, or professional service, the contract could not be successfully attacked because it had not been let by advertising for competitive bidding.   A contract for municipal supplies might also be unassailable although made without competitive bidding, if, as in Silsby Mfg. Co. v. Allentown, 153 Pa. 319, the article needed was under the protection of a patent, and, therefore, competition was impossible.

None of these reasons for failing to comply with the Act of 1901 by advertising for competitive bidding is present in the case at bar.   The evidence establishes, and it is conceded, that in 1897 and 1904 when the respective contracts were let by the city to the Philadelphia Company there were three rival companies furnishing natural gas for fuel purposes to consumers in the City of Pittsburgh.   When the first contract was let, the Philadelphia Company's pipe line was 750 feet, the Peoples Natural Gas Company's line was 2,500 feet, and the Manufacturers Light & Heat Company's line was 8,860 feet from the hospital.   To furnish gas under its contract, the Philadelphia Company extended its line to the hospital.   The distance of the pipe lines of the rival companies from the hospital was clearly no reason for the jury finding or the court holding that the rival companies would not have bid for the contract had they been given an opportunity to do so.   If the Philadelphia Company was justified in 1897 in laying its pipe line 750 feet to secure the large revenue which would follow from the acceptance of the contract, there may be many reasons, known to themselves, why the rival companies furnishing natural gas in the same city, and one of them in the same district, could with profit afford in 1904 to extend their lines to the hospital.   The parties who could determine whether, under the circumstances, it was practicable and profitable for the other two companies to compete for the present contract were not the city officials whose duty it was to let the contract, the jury or the court, but the companies themselves, and their judgment could only be ascertained in the manner prescribed in the city charter.   There are so many things which would necessarily enter into the question, that only those familiar with the production and sale of natural gas could determine it.   The expense to the rival companies in 1904 of producing the gas, or the cost to them of producing and furnishing it in that district, the cost of laying their pipe lines the requisite distance to reach the hos-

pital, the revenue from additional consumers along the lines, the desire to enlarge their plants and to enter new territory, and other matters must necessarily be considered and would be controlling in competitive bidding, and hence were questions for the bidder, and not for a court or jury, to determine.   It is apparent from the terms of the contract made by the city officials with the Philadelphia Company that it was important for the protection of the city against exorbitant rates that there should have been competitive bidding.   There was no fixed price at which the gas was to be furnished in the contract made with the plaintiff company.   The contract was for the period of one day, and the rates stipulated were subject to be changed at the pleasure of the company which did, from time to time, increase them. It is manifest, we think, that a contract containing such terms should not be let by city officials without affording an opportunity for competitive bidding to rival companies operating in the same territory.

For the reasons stated, the learned court below should have directed a verdict for the defendant city, or entered judgment non obstante veredicto for the city, and we, therefore, sustain the nineteenth, twentieth and twenty-first assignments of error.

The judgment is reversed, and judgment is now entered for the defendant non obstante veredicto.