## Commonwealth ex rel. v. Shimer.

*Mandamus—School district—Contracts.*

A contract entered into by a school district which is not supported by a record showing the affirmative votes of a majority of all the members of the board, and for which competitive bidding was not sought by advertisement for the erection of a school building, is not binding on the school district, and a mandamus to compel the president of the school district to sign a voucher for the payment of the same will be refused.

Mandamus. C. P. Northampton Co., Dec. T., 1924, No. 5.

*Smith, Paff & Laub*, for plaintiffs; *Asher Seip*, for defendant.

STEWART, P. J., Jan. 12, 1925.—

### Findings of fact.

1. The School District of the Township of Bethlehem is a school district of the fourth class.

2. Clayton M. Shimer is the duly elected and qualified president of the board of school directors of said district.

3. The said school district, on June 14, 1924, entered into a contract with the Asbestos Buildings Company for the purchase of a sectional school building for the sum of $7600, particularly set out in Exhibit No. 4.

4. The minute of the board of June 14, 1924, referring to the said building, is as follows: "On motion of Frace and Arbogast to erect a four-room port-

able building at Miller Heights, provided the conditions and the building would be satisfactory to the State and to the board of directors."

5. The minutes of the board nowhere contain a record showing the affirmative vote of the majority of all the members of the board in favor of entering into the contract above referred to.

6. No public notice was given asking for competitive bids for the purchase of a school building.

7. The Asbestos Buildings Company erected a building at Miller Heights in the said district, and the sum of $7462 is the balance due on the price of said building.

8. The building is not a patented article, and the Asbestos Buildings Company is not the only firm, party or corporation selling the same kind of a building.

9. The asbestos sheeting and shingles used in the said buildings are patented, but the same are not exclusively sold by the Asbestos Buildings Company, but were purchased from the Asbestos Shingle, Slate & Sheeting Company of Ambler, which latter company sells asbestos sheeting and shingles to any one desiring to purchase same.

10. The minutes of Nov. 1, 1924, show that three members of the board voted in favor of the payment of the balance due to the Asbestos Buildings Company, and also show that President Shimer protested against the action aforesaid, and that he has refused to sign a voucher for the payment of the said balance.

### Conclusions of law.

1. No legal contract has been entered into between the School District of the Township of Bethlehem and the Asbestos Buildings Company.

2. A contract such as was proposed to be entered into between said parties could only be entered into by the affirmative votes of a majority of the said school board, properly recorded on its minutes.

3. A contract such as was proposed to be entered into between said parties could only be entered into after due public notice had been given asking for competitive bids.

4. Judgment must be entered for the defendant and a writ of peremptory mandamus refused.

### Discussion.

The School District of the Township of Bethlehem, on its petition, secured a writ of alternative mandamus to Clayton M. Shimer, the president of the board of school directors. The petition set forth, *inter alia*, that the board had entered into a written contract with the Asbestos Buildings Company for the purchase of a sectional school building for the sum of $7600; that the said building was a patented building, and that the said Asbestos Buildings Company was the only party selling the same; that the immediate demands of the school district, as well as the health of the pupils and housing conditions, required immediate and prompt relief for additional school room capacity; that the building had been completed, and that the board desired to pay the cost of the same, less some work which the board had done, leaving a balance of $7462; that the board in due and proper way approved the payment of said sum and directed the issuing of a voucher, which voucher was duly prepared and executed by the secretary of the board, but that the president of the board refused to sign the same. The petition asked that he be commanded to sign the same. The president of the board filed an answer, in

which he denied, *inter alia*, that any legal contract had been entered into by the board, and averred that the board never acted by an affirmative vote of the majority of its members. He denied that the building was patented, or that there was any occasion for its purchase, and denied that there was anything legally due to the Asbestos Buildings Company, and denied that he is legally required to sign the voucher. On the trial the minutes of the school board were produced. An examination of them shows that there is no record of any legal action by the board concerning the contract entered into between it and the Asbestos Buildings Company. Contract, Exhibit No. 4, purports to be between the Bethlehem Township School District and the Asbestos Buildings Company. It is signed "C. M. Shimer, President. Purchaser. By Lloyd Kramer, Secty." It is not signed by the Asbestos Buildings Company. It is dated June 14, 1924. The minute of June 14, 1924, is set out in the findings of fact. There is no record at all of the vote. The Act of May 18, 1911, art. IV, § 403, P. L. 330, is as follows: "The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: . . . Entering into contracts of any kind, including the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars." If this was the only defect, under the decisions, it might be removed by ratification, but it appears that there was no advertisement, as required by law. It is provided by the Act of July 10, 1919, § 1, P. L. 889, amending section 617 of the Act of May 18, 1911, P. L. 309, as follows: "All construction, reconstruction, repairs or work of any nature, including the introduction of heating, ventilating or lighting systems upon any school building or upon any school property made by any school district in this Commonwealth, where the entire cost, value or amount of such construction, reconstruction, repairs or work, including labor and material, shall exceed three hundred dollars ($300), shall be done under contract or contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids." In Summit Hill School Directors, 258 Pa. 575, Mr. Justice Frazer said: "Section 617, requiring that all contracts for work on school buildings or property in excess of $300 'shall be awarded to the lowest and best bidder after due notice has been given, upon proper terms asking for competitive bids,' is mandatory. The use of the word 'shall' leaves no room for the exercise of either option or discretion on the part of the board, in so far as contracts exceeding the amount stated are concerned. Courts have uniformly held provisions in statutes requiring the obtaining of competitive bids for municipal or other improvements of all kinds to be mandatory, calling for strict compliance on the part of municipal officers: Philadelphia Co. v. Pittsburgh, 253 Pa. 147; Edmundson v. Pittsburgh School District, 248 Pa. 559. To hold such requirements directory merely would defeat the very object the legislature had in view in inserting them." That decision was followed in Murray's Petition, 262 Pa. 188, where the school directors sought to evade the purchase of stoves which cost $436, by entering into two contracts, each for $218, without advertisement. In Hanover Township School District's Audit, 265 Pa. 157, it was held: "In issuing orders for the payment of money, the school directors must be governed entirely by the provisions of the School Code with respect to both the manner of payment and the purpose. If they award contracts without competitive bidding and pay out moneys under such contracts, they are personally liable for the whole amount of such payments." We discussed a similar question in Bechtel v. Northampton County,

Commonwealth ex rel. *v.* Shimer.

16 Northamp. Co. Repr. 273, 27 D. R. 967. It was, however, contended that, under the evidence in this case, the building was a patented article, and that the case came within the rule in Silsby Manuf. Co. *v.* Allentown, 153 Pa. 319, where it was held: "Where an article needed by a municipality is made by one company only, and under the protection of letters-patent, it is not necessary to advertise for proposals." In that case Mr. Justice Williams said: "The second objection is one upon which the city could not properly insist upon in this case. The object of requiring the city to advertise for proposals to supply the materials and labor needed by it is to secure competition and enable the city to purchase its supplies at the lowest market price. But the article needed in this instance was part of a peculiarly constructed engine built by the Silsby Manufacturing Company under the protection of letters-patent owned by it. The flues were made only by the plaintiff. They could be bought nowhere else. Competition under such circumstances was impossible. *Ratio cessante cessit lex.* The law does not insist on what is impossible or absolutely useless. Advertising for proposals in this case would have been worse than useless, since it could have resulted in nothing but dangerous delay and an idle expenditure of money." The present case does not come within the exception. It nowhere appears from the record that there was any deliberation by the school directors upon this subject, and the testimony conclusively supports our finding that the article is not a patented one. It appears that the sheeting and shingles are patented. All the rest of the building and the method of construction are not patented, and the Asbestos Buildings Company is not, as in the Silsby case, the sole maker. These articles are made by the Asbestos Shingle, Slate & Sheeting Company of Ambler, and this company sells its product, not only to the Asbestos Buildings Company, but to any one who may desire to purchase it. It also appeared in evidence that portable school buildings of this character, although without the asbestos features, were sold by quite a number of other manufacturers. It might well have been that, if advertisement had been made according to law, some of these other styles might have contained advantages which were superior to those in the one selected. The state of affairs in this case is to be regretted. The above cited cases show that if the board had paid this money they might have been removed and held personally liable. It would seem unjust that the Asbestos Buildings Company is not to be paid for its building. In Yingling *v.* Dunlap, 68 Pa. Superior Ct. 425, the syllabus is: "Where a municipality has by ordinance authorized a contract to be made and appropriated a fund for payments under it, thus complying with the Act of April 21, 1858, P. L. 385, a city official who enters orally and without previous advertisement for bids into a contract thus authorized, cannot be held personally liable by the contractor, unless he specially engages in writing to make himself liable on the contract. In such a case, the contractor must be presumed to know as much as the city's agent of the legal requirements of an enforceable contract." See, further, conclusion of the opinion in Hanover Township School District's Audit, 265 Pa. 157.

And now, Jan. 12, 1925, findings of fact and of law are filed herewith and made a part hereof, and judgment is found in favor of the defendant and peremptory mandamus is refused; notice of this finding and decision to be given forthwith by the prothonotary to the parties or their attorneys of record, and if no exceptions thereto are filed in the prothonotary's office within thirty days after service of such notice, judgment shall be entered thereon by the prothonotary without further order of court.

From Henry D. Maxwell, Easton, Pa.