# Commonwealth ex rel., Appellant, *v.* Jones.

*Municipal contracts — Advertisement — Failure to advertise — Work outside of original contract awarded to contractors—Act of June 27, 1895, P. L. 405.*

1. One who deals with a municipality must recognize that it can contract only on such terms as the legislature has seen fit to prescribe.

2. Where a statute provides a formal mode of making municipal contracts, such provision is mandatory and must be observed.

3. Municipal authorities may, without advertising for bids, provide for work incidental to that covered by the original contract, or for such minor changes and additions thereto as may become reasonably necessary, but cannot so authorize what amounts to a new undertaking.

4. A law requiring municipal work to be advertised and given to the lowest responsible bidder is mandatory, and the municipality's liability depends on compliance therewith.

5. Where a county, after. duly advertising, awards a contract for the erection of guard rails along a public highway, and subsequently, on a change of plans so as to eliminate certain dangerous curves, awards the work of elimination by excavation amounting to many thousands of dollars to the same contractor, without advertising for bids as provided by the Act of June 27, 1895, P. L. 405, the second contract cannot be enforced against the county.

*Public officers — County controller — Ministerial duties — Mandamus—Legal rights.*

6. Where a contract is legal, or a warrant is for a valid indebtedness, the duty of the county controller is ministerial, and he can be compelled by mandamus to approve the one or countersign the other, but he cannot be compelled to join in that which is illegal, invalid or a violation of a statute.

7. One who sues for the writ of mandamus must have some well defined legal right to enforce.

Argued May 4, 1925.  Appeal, No. 82, March T., 1925, by plaintiff, from judgment of C. P. Cambria Co., March T., 1924, No. 267, for defendant n. o. v., in case of Commonwealth ex rel. Met-Con Co., Inc., v. Herman T. Jones, County Controller.  Before MOSCHZISKER, C. J.,

WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Petition for mandamus and trial on issue raised by responsive answer. Before REED, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff. Judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was, inter alia, judgment n. o. v., quoting record.

*J. J. Kintner,* with him *Shettig & Nelson, Jones & Griffith* and *Forest & Percy Allen Rose,* for appellant.— The county controller is without authority to refuse to countersign a county warrant for the improvement of a county road where the work has been approved and ratified by the county commissioners unless there is substantial evidence of fraud: Silsby Mfg. Co. v. Allentown, 153 Pa. 319.

Where a contract is awarded within the scope of authority vested in the county commissioners, and the work in the contract is approved by the county commissioners, the county controller cannot substitute his discretion in place of the county commissioners': Com. v. George, 148 Pa. 463; Com. ex rel. v. Phila., 176 Pa. 592; Com. ex rel. v. Phila., 272 Pa. 449; Com. ex rel. v. Pittsburgh, 206 Pa. 379.

County engineer, subject to the approval of county commissioners, was the sole judge of all conditions and terms of the contract, and the controller had no discretion, he acting merely in ministerial capacity: Clark & Sons Co. v. Pittsburgh, 217 Pa. 46; Com. v. Pittsburgh, 204 Pa. 218.

*J. Russell Leech,* for appellee.—The provisions of the act are mandatory, and contracts made for public work

without compliance therewith are not binding upon the municipality: Phila. v. Pittsburgh, 253 Pa. 147; Ayers v. New Castle, 10 Pa. Superior Ct. 559.

The record evidence discloses beyond doubt that the excavation here in question to "eliminate dangerous points" was not only not contemplated by either party to the contract, at its execution, as above established, but was treated by the commissioners, not as an incident to the original guard rail contract, but as an entirely new and separate matter: Addis v. Pittsburgh, 85 Pa. 379; Ayers v. New Castle, 10 Pa. Superior Ct. 559.

OPINION BY MR. JUSTICE WALLING, May 25, 1925:

This was a petition for a writ of mandamus to compel the county controller to countersign a warrant for payment of work done on a county highway; a responsive answer was filed and at the trial the court directed a formal verdict for plaintiff, reserving certain questions of law on which judgment was entered for the defendant n. o. v., and the former has appealed.

The record discloses no error. In July, 1920, Cambria County duly awarded to the Met-Con Co., Inc., plaintiff, a contract for the erection of twenty thousand feet of guard rail along the public county highway known as Haws Pike, the consideration therefor being $23,090. The guard rail consisted of galvanized steel cable supported by reinforced concrete posts. The contract also contained a provision relating to retaining walls and stipulated that in case the contractor was compelled to excavate for footing it was to be done at three dollars per cubic yard. The work was placed under the supervision of the county engineer, and, some seven months after the contract was let, he concluded that certain dangerous curves along the lines of this highway should be eliminated by excavation, and prepared plans accordingly. This met with the approval of a majority of the county commissioners, who, in March, 1921, authorized the engineer to direct plaintiff "to do the excavating

called for on the plans and specifications prepared by the said county engineer for the elimination of dangerous curves and points on the Haws Pike in the township of Lower Yoder at the unit price of three ($3) dollars per cubic yard, as set forth in the proposal and contract between the said county of Cambria and the said Met-Con Company, Inc., which said contract is dated the 26th day of July, 1920." The engineer estimated the cost of this excavation at $17,394, but the amount here in controversy, for which defendant refused to countersign the warrant, is $14,191.86. That appellant did the excavating to which we have just referred is admitted and no question is raised as to the price, but the defendant, as controller, challenged the liability of the county therefor, by reason of the statute which requires county work to be advertised and let to the lowest and best bidder. Section 10 of the Act of June 27, 1895, P. L. 403, 406, here applicable, provides that: "From and after the passage of this act all contracts made by the commissioners of said county involving an expenditure exceeding one hundred dollars shall be in writing, and shall, immediately after their execution, be filed with the controller; but no contract shall be made, nor the payment thereof certified by the controller, for over one hundred dollars, unless when made with the lowest and best bidder, after due notice to be published by the controller, when directed by the commissioners, if he approve the purpose of the proposals invited; all bids to be received by the controller, under seal, and to be in his presence opened by the commissioners, and the contracts awarded, of which awards the controller shall keep a record, and he shall certify no warrants for contracts not made agreeably thereto." Yet here the county commissioners, without advertising and without competitive bids, gave this work, amounting to more than $14,000, to plaintiff in entire disregard of the statute. The excavation for the elimination of curves, while a proper improvement, was entirely outside the original contract, for neither

therein, nor in the accompanying plans and specifications was there any reference to such excavation. The bidders at that time, of which plaintiff was the lowest, could have had no knowledge of it. This is manifest, for the plans covering the work here in question were not prepared until seven months after that contract was let. The only reference to excavation in the original contract is for "footing," an entirely different matter. No reason appears why the excavation in the elimination of curves should not have been advertised and let as a separate contract. It would be remarkable if this excavation work, costing approximately two-thirds as much as the original contract, could be treated as merely incidental to it. If so, then, to a contract of one hundred dollars for guard rails, the commissioners might, without securing bids, obligate the county for thousands of dollars for excavating or other like work, providing it was done by the party having the guard rail contract. True, municipal authorities may, without advertising for bids, provide for work incidental to that covered by the original contract (Clark & Sons Co. v. Pittsburgh, 217 Pa. 46), or for such minor changes and additions thereto as may become reasonably necessary, but cannot so authorize what amounts to a new undertaking: Ayers v. New Castle, 10 Pa. Superior Ct. 559. This thought is well expressed by MR. JUSTICE KEPHART, speaking for the court, in Hibbs et al. v. Arensberg et al., 276 Pa. 24, 27, that, "These officers [municipal officers] must act honestly, reasonably and intelligently, and a new departure must not so vary from the original plan or be of such importance as to constitute a new undertaking, which the act controls, and where fairness could only be reached through competitive bidding."

Furthermore, he who deals with a municipality must recognize that it can contract only upon such terms as the legislature has seen fit to prescribe. As stated by MR. JUSTICE FRAZER, in Harris v. City of Philadelphia et al., 283 Pa. 496. "It has been uniformly held, and

may now be regarded as the general rule in this state, that where a statute provides a method or formal mode of making municipal contracts, such provision is mandatory and must be observed, otherwise the contract is not enforceable against the municipality;" and see cases there cited. A law requiring municipal work to be advertised and given to the lowest responsible bidder is mandatory and the municipality's liability depends upon compliance therewith: Philadelphia Company v. City of Pittsburgh, 253 Pa. 147; Addis v. City of Pittsburgh, 85 Pa. 379; Dolan et al. v. Schoen et al., 261 Pa. 11; Summit Hill School Directors, 258 Pa. 575; Smart v. Phila., 205 Pa. 329; Hepburn v. City of Philadelphia, 149 Pa. 335; and see note to Fones Bros. Hardware Co. v. Jacob Erb et al. (Ark.), 13 L. R. A. 353. It follows that the County of Cambria is not liable for the excavation in question; that being so, it was not only the right but the duty of the defendant to refuse to countersign the warrant for payment to plaintiff of the $14,191.86 here at issue, and the trial court properly so held. Undoubtedly where a contract is legal, or a warrant is for a valid indebtedness, the duty of the controller is ministerial and he can be compelled to approve the one or countersign the other, but he cannot be compelled to join in that which is illegal, invalid, or a violation of the statute. One who sues for the writ of mandamus must have some well defined legal right to enforce: Commonwealth v. Mitchell, 82 Pa. 343; Carpenter v. Yeadon Boro., 208 Pa. 396.

The judgment is affirmed at the cost of appellant.