## Dolan et al. v. Schoen et al., Appellants.

*Municipalities—Cities of the third class—Act of June 27, 1913, P. L. 568, 576—Municipal contracts—Improvements—Repairs— Competitive bidding—Equity—Injunction—Taxpayer's bill.*

1. Where the charter act of a city prescribes the method or formal mode of making municipal contracts, it must be observed, and if not executed in conformity therewith a contract is not enforceable against the municipality.

2. Under Sec. 5, Article 4, of the Act of June 27, 1913, P. L. 568-576, relating to the government of cities of the third class, contracts for improvements to a city hall, including new heating, lighting and plumbing systems, new partitions, stairways, windows,

entrances, etc., must be let as provided by the act; and cannot be paid for out of a contingent fund without competitive bidding.

3. To hold that a contingent fund created to meet incidental expenses and necessary repairs could be used for the permanent alteration and remodeling of public buildings would practically abrogate this section of the statute.

4. While some of the work may properly be classed as ordinary repairs, yet as that is blended with the other it cannot be made the basis for a separate claim.

5. In a taxpayer's suit to enjoin a. city of the third class from paying and a contractor from collecting the cost of improvements to the city hall, it appeared that the city council had appropriated $2,500 for the improvements; that plans and specifications were prepared by the architect and, upon due advertisement, bids were submitted, and a tabulation showed that the improvements would cost nearly $2,000 more than the appropriation. The bids were rejected and the amount appropriated for the improvement transferred to the contingent fund. Thereafter, a city official consulted with some of the contractors, and secured new bids without advertising, ignoring the original plans and specifications. The mayor and council let contracts on such new bids and the work was proceeded with, so that the interior of the building was entirely changed. The work was well done and no fraud was alleged. *Held,* the lower court properly decided that the cost of the improvement could not be recovered by the contractors because the contracts had not been let after competitive bidding as required by the Act of 1913.

Argued Feb. 18, 1918. Appeal, No. 116, Jan. T., 1917, by defendants, from decree of C. P. Schuylkill Co., Nov. T., 1916, No. 1, awarding an injunction, in case of Hugh Dolan, for himself, and for such other taxpayers as may become parties, v. Jacob B. Schoen, Hiram S. Davies, J. Oren Bearstler, George W. Jungkurth, Councilmen; F. Pierce Mortimer, Mayor; Harry K. Portz, City Controller, and Frank W. Leib, Treasurer of the City of Pottsville; C. Messersmith, A. C. Hasler, Jacob F. Speacht, George M. Knoll, Charles O. Faust and H. W. Lord. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for injunction.   Before BECHTEL, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded the injunction. Defendants appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and law and the decree of the court.

*E. P. Leuschner* and *James B. Reilly,* for appellants.

*E. D. Smith,* for appellee.

OPINION BY MR. JUSTICE WALLING, March 18, 1918:

This is a taxpayer's bill to restrain the expenditure of public money.   Pottsville is a city of the third class; and, at the beginning of 1916, its councilmen decided to remodel and improve the city hall.   For such purpose twenty-five hundred dollars were included in the general appropriation ordinance for that year.   An architect was employed to prepare plans and specifications, and thereafter, upon due advertisement, bids were submitted for different parts of the work, a tabulation of which showed that the improvement would cost nearly two thousand dollars more than the sum appropriated, and the bids were rejected.   Then the council, transferred the twenty-five  hundred  dollars  to  a  contingent  fund. Hiram S. Davies, a member of council was superintendent of parks and public property, and as such took a leading part in this matter.   He consulted with some who had submitted bids and with others; took them to the city hall and verbally explained what was to be done in the different branches of the work; secured new bids on such explanations without advertising, and ignoring the original plans and specifications.   The mayor and council let contracts on such new bids and the work was proceeded with.   The improvement as so made cost about two thousand dollars; and included new heating, lighting and plumbing systems; also new partitions,

stairs, doors, windows, etc. It also included some excavation and the construction of a new drain in the basement, and the removal of the tower; also plastering, painting, papering, etc. As stated by the court below, "It consisted in the remodeling of the city hall; new rooms were added; bathrooms put in; stircases changed; hall built. In fact, the interior of the building was completely changed." So far as appears the work was well, economically and honestly done and no fraud is alleged. However, plaintiff filed this bill to enjoin the city authorities from paying and the contractors from collecting for the same, on the ground that the work had been illegally done. A preliminary injunction was granted as prayed for, which the court below made permanent after final hearing. Defendants appealed.

We are all of the opinion that the decree was right under the law. Section 5 of Art. IV of the Third Class City Act of June 27, 1913, P. L. 568, 576, known as the Clark Act, provides, inter alia, "All stationery, paper and fuel used in the council and in other departments of the city government, and all work and materials required by the city, shall be furnished, and the printing, advertising, and all other kinds of work to be done for the city, except ordinary repairs of highways and sewers and other public improvements, shall be performed, under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance......Council may by ordinance provide a contingent fund for necessary repairs or incidental expenses, not otherwise provided for in the general appropriations, and such funds may be expended without advertising for bids." The work here was not done under contract given to the lowest responsible bidder. In fact all the competitive bids had been rejected and these contracts were let by private arrangement on different conditions. The claims cannot be sustained under the exception as to ordinary repairs, for the chancellor properly finds that the improvements in question

were not ordinary repairs. Neither can they be included under the term necessary repairs or incidental expenses. Council evidently did not regard the improvements to the city hall as necessary repairs to be made from the contingent fund without advertising for bids, as they embraced that expense in the general appropriation ordinance and advertised for bids. True, as the chancellor finds, some of the work may properly be classed as ordinary repairs, but as that is blended with the other it cannot be made the basis for a separate claim. To hold that a contingent fund created to meet incidental expenses and necessary repairs could be used for the permanent alteration and remodeling of public buildings would practically abrogate this section of the statute. Council might have changed their plans and readvertised for bids, but they could not evade the law by the attempted creation of a contingent fund and by denominating the improvement necessary repairs. New partitions, new stairways, new windows, new entrances, etc., cannot pass as necessary repairs. While here no actual loss resulted, yet the statute requiring important municipal work to be open to competition is a valuable protection to the public and cannot be ignored.

The provision stated in the above quoted section is not new to the statutes of this Commonwealth. It appears in the Wallace Act of May 23, 1874, P. L. 230, and in subsequent legislation, and has been construed by this court. In Mazat v. Pittsburgh, 137 Pa. 548, it is held (p. 561) : "It cannot be doubted that the true intent of the Act of 1874, and the ordinance passed in pursuance thereof, regulating the awarding of public contracts is to secure to the city the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible every avenue to favoritism, and fraud in its varied forms." See also Louchheim v. Philadelphia, 218 Pa. 100. In considering a similar provision relating to cities of the second class in the very recent case of Philadelphia Company v. City of

Pittsburgh, 253 Pa. 147, our Brother MESTREZAT, in delivering the opinion of the court (p. 151), says: "We have uniformly held in numerous decisions, and it may now be regarded as the general rule in this State, that where the charter act of a city prescribes the method or formal mode of making municipal contracts, it must be observed, and if not executed in conformity therewith a contract is not enforceable against the municipality."

The assignments of error are overruled and the decree is affirmed at the costs of the appellants.