Harris, Appellant, *v.* Philadelphia et al.

474

Argued February 4, 1930.   Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*W. B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *Manus McHugh,* for appellant.—Prequalification of bidders is not legal in the State of Pennsylvania without legislative authority: Louchheim v. Phila., 218 Pa. 100; Smith v. Phila., 227 Pa. 423; Flinn v. Phila., 258 Pa. 355; Phila. Co. v. Pittsburgh, 253 Pa. 147; Harris v. City, 283 Pa. 496; Ryan v. Ashbridge, 10 Pa. Dist. R. 153.

Whatever the merits of the theory of prequalification of bidders as a principle, the practice adopted by the City of Philadelphia, as set forth in the ordinance of June 14, 1929, is illegal.

*James Francis Ryan,* with him *G. Coe Farrier* and *Ernest Lowengrund,* Assistant City Solicitors, *Augustus Trask Ashton,* City Solicitor, attorneys for the city, and *Joseph P. Gaffney,* attorney for Keystone State Corporation.—The ordinance of June 14, 1929, providing for prequalification of bidders is legal and authorized by the Act of May 23, 1874, P. L. 230: Ligonier Valley R. R. v. Latrobe, 216 Pa. 221; West Chester v. Cable Co., 227 Pa. 384; Com. v. Walton, 236 Pa. 220; Vare v. Walton, 236 Pa. 467; Com. v. Puder, 261 Pa. 129; Duquesne v. Fencke, 269 Pa. 112; Canton v. Williams, 67 Pa. Superior Ct. 239; Setzer v. Pottsville, 73 Pa. Superior Ct. 573.

OPINION BY MR. JUSTICE SIMPSON, March 17, 1930:

Plaintiff filed a taxpayer's bill in equity to enjoin the City of Philadelphia and certain of its officials from entering into a contract for the doing of specified municipal work, which contract, it was alleged, was about to be made with an illegally selected bidder. The trial judge granted an injunction; the court in banc vacated it and dismissed the bill; and plaintiff now appeals. Pending the appeal, the contract was awarded to a bidder, which, upon its motion, was allowed to intervene as a party defendant.

The award was made according to what is known as the Prequalification Plan. Briefly stated, this is a method for deciding, in advance of the bidding, who are responsible bidders, and for refusing to receive bids from any others. Under it, aside from all other considerations, the departmental head advertising for bids for a particular contract, is bound to award it to the prequalified bidder, who, in the manner specified in the advertisement, bids the lowest sum for doing the work. Appellant contends (1) That no plan can be devised according to this method, which would not violate the provisions of section 6 of the Act of May 23, 1874, P. L. 230, 233; and (2) In any event, the method specified in the

ordinance of June 14, 1929, under which the contract was awarded in the present case, violates that section of the statute.

We find no difficulty with the first of these contentions. The section referred to provides that all work and materials required by the city "shall be performed and furnished under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance; and it shall be the duty of councils forthwith to enact such ordinances." It will be noticed that while the city is required to award all contracts "to the lowest responsible bidder," the method of ascertaining who is in that category is to be "prescribed by ordinance." Since we cannot hold that the first ordinance enacted pursuant to the statute was unchangeable (for which no one does or could properly contend), we must decide that councils have the right, at any time, to pass a legal ordinance which will provide for the determination of the question as to who are "responsible bidders" on municipal work, before the receipt of the bids, instead of thereafter, as had been the previous practice. It follows that the ordinance of June 14, 1929, is unobjectionable in so far as it merely provides for a preliminary determination of the responsibility of prospective bidders. Whether the particular method ordained is or is not objectionable will be considered later.

Appellees strenuously contend that what we have already said should result in dismissing the bill without considering appellant's second contention, because, "Where an ordinance is passed under the sanction of an act of assembly, its reasonableness is not open to inquiry," citing Ligonier Valley R. R. Co. v. Latrobe, 216 Pa. 221; Com. v. Walton, 236 Pa. 220; Com. v. Puder, 261 Pa. 129, and kindred cases. We do not question the authority of those cases, nor appellees' statement of what they decide. It is one thing to say, however, where it "is passed under the sanction of an act of assembly,"

and quite another to say where it "is passed under the [asserted] sanction of an act of assembly." Were this not so, councils might adopt any plan, whether it accorded with or violated the statute, and the courts would be powerless to enjoin action under it. Here, as always, the question is whether the method provided by the ordinance has the *actual* sanction of the statute. If it has, that is the end of the matter one way; if it has not, that is the end the other way. Under which alternative the present method falls, is the question to be decided in determining appellant's second contention.

In doing this, we are compelled to consider the provisions of the ordinance at some length. It requires that every one proposing to bid for a municipal contract shall answer, under oath, a questionnaire "in standard form showing that such intended or prospective bidder has the necessary facilities, experience and financial resources to perform the work in a proper and satisfactory manner within the time stipulated. Such statements must designate and describe the plant, equipment and facilities of the bidder, relate his experience in doing the same or similar work, and disclose his financial resources, specifying the amount of his liquid and other assets and liabilities and the number and amount of his other existing contracts or commitments, including and indicating those with the city; said statements to be confidential." It further specifies that the answers received shall be scrutinized by the director of the department which is to supervise the performance of the contract, and, if he is satisfied, the prospective bidder's name shall be placed on what is known as the "white list" of that contract. This determines that he is a "responsible bidder" so far as it is concerned; he is allowed to submit a bid, and no further inquiry is permitted regarding his responsibility. If his answers are not satisfactory, he is rejected as a responsible bidder thereon, and, unless the director's decision is overruled, no bid will be received from him. He may, however, within a

time specified, request a "hearing before a board to be composed of the said awarding officer and two other heads of departments, chiefs of bureaus of other departments, or other city officials conversant with construction work, and to be designated by the mayor, or, in the absence of the mayor, by the director of any city department," the board having the right to hear additional evidence regarding relevant matters, and to "affirm, reverse, revise or modify the decision of the awarding official, in its discretion." It is not to have before it, however, for consideration or comparison, the confidential answers of any other of the proposed bidders, except such as have been compelled to appeal from the decision of the director; nor can it remove from the white list any name he has placed on it.

It is obvious that, even if this plan is, in some respects, an advance on the previous method, it nevertheless opens wide the door to possible favoritism. The awarding director can place upon the white list the name of any intending bidder whom he chooses to approve, however irresponsible in fact, and that decision is not reviewable. On the other hand, he may compel all bidders, who are not favorites of his, to go to the expense of an appeal to the board, which will have before it only the answers to the questionnaire by those the awarding director has excluded from bidding, and has no way of knowing whether or not their plant, equipment, experience and financial standing are superior or inferior to those of the bidders whose names the director has placed on the white list. This might well result in everybody being excluded except those who are personal or political friends of the awarding director, or whom he knows are conspiring together to seemingly bid in competition, but in reality to destroy all competition; and it certainly *would* result in giving the contract to one of the favored bidders, if his bid happened to be the lowest of those actually received, though he was not in fact, a responsible bidder, or no more responsible than those who were

not permitted to submit bids and might have offered to do the work for a less sum.

We have frequently said that the Act of 1874 must be strictly complied with in the matter of municipal contracts. In Louchheim v. Phila., 218 Pa. 100, plaintiff was the lowest bidder, but after some negotiations between the director and the firm to whom the contract was awarded, their original bid was modified, and the contract given to them for a sum lower than the bid of plaintiff. No such opportunity was given to him. Hence, he applied for and obtained a special injunction, which was afterwards dissolved and he appealed. We reversed, saying (page 102) : "It is perfectly clear that the legislative and municipal intent in the awarding of such contracts was that there should be open and honest competition in order that fair prices should be secured and the city protected from collusive bidding as well as favorite bidders...... This is a wise and wholesome rule which should *always* prevail in the letting of such contracts."

In Smith v. Phila., 227 Pa. 423, 430-31, we said: "In awarding contracts, the officers of the city must comply strictly with the requirements of the statutes...... We have said this time and time again for reasons which are apparent and which have been fully and frequently stated. ...... These statutory provisions [section 6 of the Act of May 23, 1874, supra], as held in Hinkle v. Phila., 214 Pa. 126, are mandatory and must be strictly complied with. They cannot be evaded or disregarded by the city or by its officials. The protection of the public as well as the rights of the contractor require their rigid enforcement...... The necessity for a strict observance of the statutory duty imposed upon city officials in awarding contracts is well stated by the learned president of the court below. He says: 'The infirmities of human nature, the natural disposition to favor friends, personal and political, and the various motives which influence public officers to depart from a

strict and rigid adherence to the obligations that rest upon them as representing the public, make it important that they should be held strictly within the limits of the powers conferred upon them.' "

We have many times restated the rule of the above cases so as to meet and overcome every attempt, similar or variant, to evade the wholesome provisions of the statute. See Phila. Co. v. Pittsburgh, 253 Pa. 147; Flinn v. Phila., 258 Pa. 355; Summit Hill School Directors, 258 Pa. 575; Dolan v. Schoen, 261 Pa. 11; Harris v. Phila., 283 Pa. 496, 503; Com. v. Jones, 283 Pa. 582, 587; Page v. King, 285 Pa. 153; Garr v. Fuls, 286 Pa. 137. Following all of our cases, therefore, we again lay down the rule that all bidders on a municipal contract must be accorded the same treatment, for not otherwise can the requirements of the statute be complied with. The city may, as heretofore she has done, accept and schedule all bids, and then, if acting in good faith, refuse to award the contract to one who is the lowest bidder, because he is not the "lowest *responsible* bidder." Or she may, as she is now attempting to do, determine in advance who are responsible bidders, and refuse to receive bids from those who, after treating all alike, she determines are not in that class. But she may not impose conditions on one prospective bidder, which are not imposed upon all; nor may she enforce a method by which, through favoritism, one person may be conclusively authorized to bid on a pending contract, while another, equally as responsible and perhaps more so, is wholly excluded from even submitting a bid.

It may not be inappropriate to add that a committee of well-known citizens, appointed by the mayor to consider the advisability of changing the present system of awarding municipal contracts, recommended the Prequalification Plan, but did not approve the improper method to which we have adverted. An eminent expert, employed by them, advised that *all* such questionnaires and answers should be referred to "a committee of three,

consisting of a member of the city solicitor's office, the controller and the department head affected, and in the case of building construction work also to include the city architect. Such a personnel would include the proper legal and technical advice necessary to a proper analysis and classification of prospective bidders, and would help to secure fair and impartial treatment to all concerned." This was the method endorsed by the committee, and is embodied in its report; unfortunately, in the respect above criticised, it was not made part of the ordinance, which, for this reason, must be held invalid. Not otherwise, under this plan, can all prospective bidders be placed on the same plane, which is an essential requirement under the Act of 1874.

Finally, it is contended by appellees, that even if we held the ordinance was for any reason defective, still we should affirm the decree below, because it did not appear that plaintiff, who sued simply as a taxpayer, was injured, there being no averment or proof that any of the three rejected bidders would have bid less than the intervening defendant. Aside from the contention that to so hold would permit the city officials to take advantage of their own wrong, it suffices that a taxpayer's right cannot be limited in the way suggested. He may object to the making of any contract, which would result in the wrongful taking of the city's money, whether his individual loss would be great or small: Paul v. King, 285 Pa. 153. As is well said by AUDENREID, J., in Croasdill v. City of Phila., 18 Pa. Dist. R. 719, 720: "each taxpayer has the right to demand that the requirements of law with respect to the method of letting municipal contracts shall be complied with in the case of every contract, apart from the question of the immediate or direct loss that a failure to comply therewith may involve in any specific case." This is the basis of the present bill, and is a well recognized head of equity jurisdiction, specified, as such, in section 13 of the Act of

June 16, 1836, P. L. 785, 790: Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, 41.

The decree of the court below is reversed and the record is remitted that an injunction may be entered as prayed for in the bill.