In the Matter of the Application of the J. WEINSTEIN BUILDING CORPORATION and Others, Petitioners, for a Mandamus Order against ADDISON B. SCOVILLE and Others, Respondents.

Supreme Court, Westchester County, November, 1931.

*David Rubin*, for the petitioners.

*J. Henry Esser, Corporation Counsel* [*Arthur H. Ellis, Assistant Corporation Counsel*, of counsel], for the respondents.

WITSCHIEF, J. Although these motions for peremptory orders of mandamus were orally argued September 16, 1931, it has been impossible to make earlier disposition of them because the final briefs were not received until the 2d day of November, 1931.

It appears by the petitions that the respondents compose the board of education of the city of Mount Vernon, N. Y.; that said board of education has appropriated $750,000 for the construction of an addition to Washington School No. 1 in the city of Mount Vernon, N. Y., and has duly adopted and filed plans and specifications for such addition; that it thereupon advertised for proposals or bids for the work, the advertisement requiring each proposal to be accompanied by a written consent of a surety, which surety shall be a surety company licensed to do business in the State of New York, which shall be required to qualify in a sum equal to the value of the work, the undertaking to be in the form as prescribed in the specifications. The advertisement also required that each proposal be accompanied by a certified check for an amount equal to five per cent of the base bid, etc.

The advertisement then provided that applications for plans and specifications might be made at the office of the architects in New York city, and that at the time such application was made each applicant should submit to the board of education a financial statement and experience questionnaire as of current date, to be submitted in form prescribed by the board of education, the forms to be secured from the architects.

The advertisement makes no provision for the rejection of applications for plans and specifications, nor does it specify the purpose, or the disposition to be made, of the financial statement and experience questionnaire.

The petition then set forth that each petitioner applied for the plans and specifications, and each received a letter from the board of education stating that it had not been accepted as a bidder for the work, which was, in effect, a rejection of the application of the petitioner for copies of the plans and specifications and a refusal to permit the petitioner to submit a bid for the work.

Each petition sets forth further allegations designed to show financial responsibility of the petitioner and its extended experience in construction work.

The motion papers and the oral argument disclose that the board of education of the city of Mount Vernon has undertaken to determine the financial responsibility and the experience of prospective bidders for the work to construct the addition to Washington School No. 1. In other words, the board of education has sought to limit those who may submit bids for the work. Its design was

to eliminate such contractors as it should deem inexperienced, or of insufficient financial standing, and thereby to limit those who may bid for the work to such contractors as shall be deemed by the board of education to be responsible and experienced.

The theory of the board of education appears to be that bids should not be received from unsubstantial and inexperienced contractors, and that, since bids may be rejected for such cause, those who may bid may be limited in advance of the bidding.

There is much to be said in favor of this view which the board of education of the city of Mount Vernon evidently entertains, and it is not intended by this opinion to cast any reflection upon its complete good faith.

The practice which the board of education of the city of Mount Vernon has adopted is known as "prequalification of bidders," and is defined as the determination of a contractor's competency and responsibility to satisfactorily complete a given construction project before he submits a bid.

So far as the reported cases disclose, this practice has never been adopted in New York State.

In the disposition of this case it must be kept in mind that such disposition is governed by the statute law of the State of New York, which provides as follows (Education Law, § 875, subd. 8, as amd. by Laws of 1917, chap. 786): " 8. No contract for the purchase of supplies, furniture, equipment, or for the construction or the alteration or remodelling of any building shall be entered into by a board of education involving an expenditure or liability of more than one thousand dollars unless said board shall have duly advertised for estimates for the same and the contract in each case shall be awarded to the lowest responsible bidder furnishing the security as required by such board."

The practice in other States as to the prequalification of bidders is not especially helpful in the disposition of this case because the practice in other States is based upon the statute law of that State.

To illustrate, counsel for the board of education calls attention to two cases in the State of Pennsylvania, namely, *Wilson* v. *City of Newcastle* (301 Penn. St. 358; 152 Atl. 102) and *Harris* v. *City of Philadelphia* (299 Penn. St. 473; 149 Atl. 722). The right to prequalify bidders was not even involved in the *Wilson* case, the opinion in that case stating that it was claimed that the city of Newcastle had accepted a bid higher than the lowest. All that was determined in that case was that in the absence of bad faith or corrupt motives the award of a contract to a higher bidder after an investigation should not be disturbed. In the *Harris*

case the right to prequalify bidders was involved, but, as it is pointed out in that case, the decision rested upon an act of the Legislature in the State of Pennsylvania which prescribed that all work and materials required by the city should be performed and furnished under contract to be given to the lowest responsible bidder under such regulations as shall be prescribed by ordinance, etc. Attention was called by the court to the fact that the method of ascertaining the lowest responsible bidder was to be prescribed by ordinance. And it was held that the city of Philadelphia had the right to pass an ordinance which would provide for the determination of the question as to who are responsible bidders before the receipt of the bids.

The New York statute under which this case must be disposed of expressly requires competitive bidding and does not prescribe that regulations for the determination of the lowest responsible bidder may be prescribed by ordinance.

And even if it did, it does not appear that the city of Mount Vernon or the board of education has adopted any ordinance providing for the prequalification of bidders.

The advertisement for bids confers no authority upon the board of education to reject any application for plans and specifications, nor does it appear that the board of education has determined by resolution to reserve to itself the power to reject any application for the plans and specifications.

While the advertisement for proposals requires the submission of a financial statement and experience questionnaire, it does not state the purpose for which they are desired. For all that appears they may be required for the purpose of enabling the board of education to pass upon the bids to be later submitted.

There is no doubt that a municipality is authorized to propose conditions necessary to secure a fair and reasonable opportunity for competition, and that when the conditions imposed by them do give such an opportunity the courts may not interfere. (*Rose* v. *Low*, 85 App. Div. 461.)

But in the absence of any authority in this State, and basing this decision upon the quoted provision of the Education Law, and waiving the question that the advertisement affords no authority for the rejection of applications for the plans and specifications, it will be held that the conditions imposed must facilitate, not prevent, competition.

The board of education of the city of Mount Vernon has attempted to prevent competition by limiting those who may enter into competition. It is alleged in the petitions, and is not denied, that eleven of the twenty applicants for the plans and specifica-

tions have been refused the plans and specifications, thus limiting the bidding to the nine whose applications were granted.

The danger in such a practice is quite as real as it is apparent. No standard is fixed for the determination of the financial responsibility, or the qualification of the respective bidders by experience. No opportunity is offered for a hearing, or for examination of the financial statements and experience questionnaires submitted by other prospective bidders. The door is left wide open to possible favoritism.

In *Harris* v. *City of Philadelphia* (299 Penn. St. 473; 149 Atl. 722), cited by the corporation counsel, an ordinance much more favorable to prospective bidders was condemned and the rule reasserted that all bidders on a municipal contract must be accorded the same treatment, for not otherwise can the requirements of the statute be complied with. It was held that the city of Philadelphia might determine in advance who are responsible bidders and refuse to receive bids from those who, after treating all alike, are determined not to be in that class, but may not enforce a method by which through favoritism one person may be conclusively authorized to bid on a pending contract, while another equally responsible and perhaps more so is wholly excluded from even submitting a bid. It was suggested in the opinion that provision should be made for a review of the determination as to who will be allowed to bid for the work.

If what the board of education has done is to be approved, the number of those allowed to compete may be still further reduced and competition reduced to three or four, or even fewer.

The statutory requirement of competitive bidding is for the protection of the taxpayers, and is based upon the theory that competitive bidding will reduce prices. However praiseworthy the motives of the board of education of the city of Mount Vernon, it has clearly erred in its attempt to prevent competition by limiting those who may compete.

The interests of the taxpayers of the city of Mount Vernon may be amply secured by the completion bond required of the successful contractor.

Although not intending to do so, the requirement that applicants for the plans and specifications must file financial statements and experience questionnaires before being allowed to bid, and the fact that their applications for the plans and specifications may be rejected, discourages and prevents the competitive bidding which the statute requires.

To enter into the competition, a prospective bidder must first apply for the plans and specifications and must file a financial

statement and experience questionnaire. If his application for the plans and specifications is rejected, he must litigate his right to receive the plans and specifications and his right to be allowed to bid. This involves expense. If successful in the litigation, he may then submit his bid, only to find that his was not the lowest bid, so that the expense of litigating his right to bid has been lost. Confronted with an expenditure of money to enforce his right to bid, before he knows whether his bid is the lowest, it can scarcely be doubted that many possible competitors might retire from the field of competition, to the injury of the taxpayers of the city of Mount Vernon.

The corporation counsel has submitted a brief on the prequalification of bidders prepared by Harry J. Kirk, of the Associated General Contractors of America. The interest of that association in reducing the number of bidders on public work is apparent. The claim is made that its interest is in behalf of the public. While that may be true, the interest of contractors in the question is so apparent that their conclusions may not be accepted without full consideration.

If the principle of prequalification of bidders is a good one, and should be adopted by municipalities generally, provision for it should be made in the statute law, or where not prevented by statute, in the ordinances of the municipalities.

The corporation counsel argues that the discretion vested in the board of education to award the contract to the lowest responsible bidder confers upon the board of education the power to determine who shall bid. That does not necessarily follow.

It is also argued that the elimination of bidders by the prequalification method will enable public officials to avoid much unjust criticism resulting from awards to others than the lowest bidders. It seems quite as likely that the refusal to permit bids will result in greater criticism than the award of a contract to another than the lowest bidder. The suggested cure appears to be worse than the disease.

It is also suggested that the prequalification method affords adequate time to investigate the contractors' business record. There is no objection to that, and there can be no objection to the requiring of the submission of the financial statement and experience questionnaire at such time in advance of the opening of bids as will afford ample opportunity for such investigation.

Finally, it is suggested that the evils of promiscuous low bidding will be eliminated by the prequalification method. If there are such evils, and no doubt there are, they may be fully overcome by the exercise of the discretion vested in the board of education to

award the contract to the lowest responsible bidder. That is the duty which rests upon the board of education, and should not be shirked by it whatever the consequences.

Although the principle of prequalification of bidders has not been passed upon in this State, the inference to be drawn from cases involving competitive bidding indicates the propriety of the granting of these motions for peremptory mandamuses.

One of the East River bridges was erected by a commission created by act of the Legislature providing that the commission might itself construct the bridge or contract for its construction. The act did not require competitive bidding or an award to the lowest bidder. In litigation growing out of an award of a contract for the construction of the bridge, it was held that since the act did not require competitive bidding, the commission might legally limit the bidding to those whose experience and financial position warranted the belief that they would complete the work satisfactorily. (*Meyers* v. *City of New York*, 58 App. Div. 534; *Meyers* v. *Pennsylvania Steel Company*, 77 id. 307.)

In *Knowles* v. *City of New York* (176 N. Y. 430, 438) is found the following pertinent statement, the inference of which is clear: " Therefore, as the commissioners were not limited by the statute to performance of the work by contract or by competition, their intent to limit the competition both in class of contractors and in character of material was in itself neither illegal nor fraudulent."

It is, therefore, concluded that the motions for peremptory writs of mandamus should be, and are, granted, with fifty dollars costs.