Corcoran, Appellant, *v.* Philadelphia et al.

Argued November 21, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Lemuel B. Schofield,* with him *Manus McHugh* and *Edward Paul Smith,* for appellant.

*Howard E. Stern,* with him *Joseph P. Gaffney, Jr.,* Assistant City Solicitors, and *Frank F. Truscott,* City Solicitor, for appellees.

*Allen J. Levin, Samuel D. Goodis* and *Sundheim, Folz, Kamsler & Goodis,* for intervening appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 3, 1950:

This is an appeal from the dismissal of a taxpayer's bill seeking to enjoin the City of Philadelphia, its Director of Public Works and other officers, from entering into a contract for the construction of an incinerator and garbage disposal plant, and to direct defendants to reject the bids received and to readvertise for bids. By stipulation, the low bidder, United Building Construction Company, was permitted to intervene as a party defendant.

A hearing was held, and the chancellor, Judge Brown, filed an adjudication in which he made findings of fact and conclusions of law. The plaintiff filed exceptions which were dismissed by the court in banc. This appeal followed.

Pursuant to an Ordinance of City Council, approved February 6, 1946, the City of Philadelphia entered into a contract, on March 4, 1946, with Day & Zimmerman, Inc., consulting engineer, whereby Day & Zimmerman, Inc. was to prepare plans and specifications to be used by the City in advertising for bids for the design and

construction of an incinerator and garbage reduction plant to be erected at Seventh and Pattison Avenue, Philadelphia. Comprehensive plans and specifications were thereafter duly prepared. They set forth the general design and scope of work required and provided a common and detailed standard upon which [as found by the chancellor] "to base and make competitive bids, for either a mechanically stoked incinerator or a manually stoked incinerator, and for furnaces either cylindrical or rectangular in shape, and did not discriminate against any experienced, recognized and qualified manufacturer of incineration equipment, but were calculated and intended to produce competitive bidding on an equal basis."

In July, 1948, through its Department of Public Works, the City invited submission of sealed proposals or bids to conform to these plans and specifications, the bids to be received on or before October 14, 1948. The invitation for the submission of bids included a prequalification questionnaire, which was required to be filed by September 30, 1948. This questionnaire contained requirements that the contractor or a named subcontractor, who would design and construct the incineration equipment, must be an experienced, recognized and qualified incinerator company with two plants in operation of the type and design proposed at their rated capacity and without smoke, odor or fly ash nuisance for a period of at least two years previous to the date of receiving the bids. These requirements were also contained in the City's specifications.

On October 14, 1948, the Department of Public Works received two bids; one by Nicholas J. Brandolini, trading as United Building Construction Company, naming Nichols Research and Engineering Corporation as the sub-contractor for the incineration equipment (cylindrical mechanical loading incinerator process)

for the amount of $1,104,700; the other by Kaufman Construction Company, naming Nye Odorless Incinerator Company as the sub-contractor for the incinerator equipment (rectangular non-mechanical loading incinerator process) for the amount of $1,371,000.

After the bids were opened by the City and reviewed and analyzed by its consulting engineers (Day & Zimmerman, Inc.), conferences were held between officials of the City and officers of Day & Zimmerman, Inc., and United Building Construction Company. It was determined that United Building Construction Company's proposal conformed to the City's specifications and plans and United Building Construction Company was declared to be the lowest bidder.

The able counsel for appellant frankly concedes that there was no fraud or collusion in the preparation of the plans, specifications, and prequalification requirements. The principal contention is that the City did not comply with the terms of Section 6 of the Act of May 23, 1874 P. L. 230, 53 PS 282. [Repealed as to third class cities]. Under this section of the Act work and materials to be supplied to a city are to be under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance. The intent of the statute is to secure fair and just competition between bidders, and to exclude favoritism and fraud: *Mazet v. Pittsburgh*, 137 Pa. 548, 20 A. 693. Three arguments that the Act has been violated are made by appellant, which will be considered seriatim:

1. "The Two-Year Pre-Qualification Requirement to Bid Was Invalid, Arbitrarily Imposed and Applied":

With this argument we disagree. Appellant concedes that Section 2 of the Philadelphia Ordinance,

approved October 29, 1940 (Ordinances and City Solicitor's Opinions, 1940: 331, p. 335), gives the Director of Public Works the power to secure preliminarily information relative to the ability of the bidder to perform. It is asserted by appellant, however, that the ordinance does not authorize the imposition of qualification requirements as a *condition precedent* to the submission of bids. Much reliance is placed on *Harris v. Philadelphia*, 299 Pa. 473, 149 A. 722. In that case, the court held that another ordinance [June 14, 1929] was not objectionable *merely because it provided for a preliminary determination of the responsibility of prospective bidders*. However, this Court decided that the particular method enacted in the Ordinance was violative of the Act of 1874, supra, because *all* bidders were not subjected to the *same tests* to determine their responsibilities. There the prequalification plans gave municipal officers the power to finally determine, without review, that *some* bidders were entitled to submit proposals, while *other* bidders were compelled to appeal to and convince a board of review that they were qualified. Such method clearly was conducive to favoritism. The prequalification requirements in the present case are unobjectionable. All bidders were subject to the *same tests*. The requirements were reasonable in that they provided a means to determine in advance who were qualified bidders. As this Court said in *Harris v. Philadelphia*, supra, p. 480: "[The City] may . . . determine in advance who are responsible bidders, and refuse to receive bids from those who, after treating all alike, [the City] determines are not in that class."

Moreover, the prequalification requirement was not arbitrarily applied. By circuitous reasoning appellant contends that the field of potential bidders was so narrowed by the two year requirement that the possibility of competition was completely eliminated. The situa-

tion of the Morse Boulger Destructor Company, one of the prospective bidders, is cited as an example. This company has been engaged in the business of constructing incinerators since 1890 and has recognized standing in the industry. However, that company had only installed one *mechanically stoked cylindrical type incinerator*—less than two years before the present bids were to be submitted. As far as this type of incinerator was concerned, that company could not meet the two year prequalification requirement, *but it admittedly could meet the requirement with respect to other acceptable types of incinerators.* The Director of Public Works refused to alter the requirements after study and investigation. There was nothing improper or arbitrary in this action. *The City's Plans and Specifications did NOT call for the mechanically stoked cylindrical type incinerator and no other.* The plans specifically set forth that "the furnaces may be either cylindrical or rectangular in shape." True, the plans state that the City preferred the cylindrical type combustion chamber but they also provided that "other shapes, as hereinafter described, will be accepted. . . ."

2. "Lack of Common Standard and Competitive Bidding Requirements":

There is no merit in this argument. We can add nothing to what the learned chancellor said concerning this contention:

"The City's specifications and plans for the design and construction of an incinerator and garbage reduction plant provided a common and detailed standard and equality of opportunity for the submission of proposals or bids. Although they did not prescribe minute details of design and construction, they set forth the general design and scope of work required, showing an

acceptable arrangement of the plant and its component parts. Within these limitations, engineer-contractors were to prepare and submit their own detailed plans and specifications, suggesting other possible arrangements or modifications, which had to be analyzed by the City's consulting engineers, and approved or rejected by the City. This method of obtaining bids was lawful and justified under the circumstances. See Parker v. Philadelphia, 220 Pa. 208, 210, 211; Brener v. Philadelphia, 305 Pa. 182, 186-187, and Book v. Hall, 470, 475-477. sic. 339 Pa. 470.

"Incineration equipment capable of meeting the City's performance requirements differed in design, structure and operation, each type having its own peculiar details and dimensions. Five distinct types, manufactured by some twelve companies, were available, and these further differed in the use of either an automatic or manual stoking mechanism. Consequently, the design and dimensions of the building housing the incineration equipment varied with the type proposed. By permitting bidders to submit their own specifications and plans, this non-standardization was recognized and taken into consideration by a method which brought 'into competition both the price and the quality of the thing to be furnished.' Parker v. Philadelphia, supra, 211.

"Being a request to obtain the services of experts in the design as well as the construction of an incinerator plant, the City was not 'obliged to give minute specifications.' Book v. Hall, supra, 476. Indeed, it would have been impractical to have done so. Accordingly, minimum requirements, containing details of size and quality of all items, were set forth in the City's specifications, and the essentials presented for an intelligent understanding of what the City desired, enabling each bidder 'to write his own specifications', as was permissible and

warranted under the circumstances. Brener v. Philadelphia, supra, 186. Thus, competition was secured rather than precluded, for minute details in the City's specifications would have excluded some manufacturers of incineration equipment from bidding. 'It is worthy of note that no prospective bidder complained of this method or suggested a better one.' Brener v. Philadelphia, supra, 186. 'No bidder complained that the specifications were vague or indefinite.' Book v. Hall, supra, 476. To the contrary, an engineer in the employ of the low bidder testified that after studying the plans his company had no difficulty in arriving at its bids, and their sufficiency was likewise asserted by one of the engineers who had assisted in their preparation.

"Even though all types of incineration equipment were not specifically identified, and those that were lacked the clarity that might have been possible, the City's specifications were entirely proper, adequately covering alternative types and constituting 'a common standard of competitive bidding'. Book v. Hall, supra, 476-477. They provided for either a mechanically stoked or a manually stoked incinerator, and for furnaces either cylindrical or rectangular in shape, thereby sufficiently defining alternative types. In addition, the performance required of the plant was expressly set forth; hence, notwithstanding the absence of description of all types of incinerators, competition was inevitable, since bidders were not forced to compete solely upon a particular type, but, without regard to design and type, could compete upon the performance of their plants. See Brener v. Philadelphia, supra, 185 and 187."

3. "There Was Private Negotiation Between the City and the Successful Bidder, Which Is Prohibited":

There is no merit in this argument. We adopt what Judge BROWN said with respect thereto:

"The fact that the proposal or bid of United Building Construction Company raised questions of conformity to the City's specifications was not indicative of insufficiency in the latter, for some variance in detail was apt to result, and this was anticipated by provision for consideration thereof by the City's consulting engineers. The conferences between them, officials of the City and representatives of United Building Construction Company, which were held after they had reviewed and analyzed this company's proposal, disclosed that it conformed to and required no changes in the City's specifications and plans. Under the specifications, such procedure was available to all bidders, who had equal opportunity to suggest modifications. Therefore, the City's determination that United Building Construction Company was the lowest responsible bidder was clearly *not* 'the result of private negotiations between the director [and other representatives of the City] and the successful contracting firm, without regard to the conditions of the open competitive bidding and the requirements of the Act of Assembly and the municipal ordinances.' Loucheim v. Philadelphia, 218 Pa. 100, 103."

The appeal is dismissed and the decree affirmed at the cost of appellant.