Allegheny Contracting Industries, Inc. *v.*
Flaherty, et al., Officers of the City of
Pittsburgh.

Argued June 6, 1972, before Judges CRUMLISH, JR.,
KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.
President Judge BOWMAN did not participate.

*George Shorall,* Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellants.

*Owen B. McManus, Jr.,* with him *James F. Malone, III,* and *Brandt, McManus, Brandt & Malone,* for appellee.

OPINION BY JUDGE KRAMER, July 28, 1972:

This is an appeal from an Order of the Court of Common Pleas of Allegheny County overruling and dismissing, in part, the Preliminary Objections filed by the named appellants (hereinafter referred to collectively as "City" and individually by their respective titles).

On June 29, 1971, the Allegheny Contracting Industries, Inc. (ACI) filed a Complaint in Mandamus alleging that on three occasions the City had advertised for bids for the furnishing and delivering of asphalt bituminous materials for the calendar year 1971. On each occasion the City had rejected all bids. Following the submission by ACI of a bid in May of 1971, the Mayor advised ACI that its name was being stricken from a list[1] of responsible bidders, and that all future

---

[1] There is nothing in the present state of the record disclosing the authority or basis for such a list.

ACI bids would be returned unopened. Thereafter, the City again advertised for bids for said products. In response to such advertising, ACI submitted its sealed bid in proper form accompanied with the appropriate bond and filed same within the prescribed time. At the opening of the bids publicly in Council Chambers, the Mayor opened three bids and read the contents aloud. However, without opening the bid of ACI, the Mayor directed the secretary in attendance to return the unopened bid to ACI. ACI further alleges that the action of the City in refusing to open the bid of ACI acted in an "arbitrary and capricious" manner contrary to law. The Complaint further described such action by the Mayor as a "gross abuse of discretion", and alleges conduct by the City constituting "bad faith" which has and will irreparably damage ACI. ACI prayed for a judgment against the City commanding it to open the bid submitted by ACI on June 28, 1971 (which unopened bid according to the Complaint was still in the possession of the City upon the filing of this action), and requested that the City be directed to readvertise for bids.[2]

The Complaint was amended to delete the name of the deceased Director of the Department of Supplies for the City, and to substitute the name of the new Director. On July 16, 1971, the City filed Preliminary Objections in the nature of a Demurrer and also raised questions related to the subject matter jurisdiction of the lower court. After argument, the lower court sustained certain of the Preliminary Objections (not here in issue), overruled the remaining Preliminary Objections, and granted the City the right to file an answer. In its appeal the City contends that the lower court

---

[2] Although the opening of bids for the delivery of asphalt for the year 1971 is moot, the principle of law involved is of such importance for the future that this matter merits a resolution of the legal issues presented.

erred in overruling its Preliminary Objections because as the City views it, whether ACI is the "lowest responsible bidder" is within the discretionary powers of the Mayor under the applicable statute, and therefore not a proper subject for a mandamus action.

That statute is the Act of March 7, 1901, P. L. 20, art XV, Section 1.1, as amended, 53 P.S. 23308.1, which, in pertinent part, states:

"Every contract relating to city affairs shall be authorized by general or specific ordinance of council and shall be let in *the manner prescribed by council.* All contracts shall be awarded to the lowest responsible bidder except in the following cases: [enumeration of exceptions not pertinent to this case]. (Emphasis added.)

"For competitive bidding on contracts involving an amount exceeding one thousand five hundred dollars, invitations for bids shall be issued pursuant to reasonable notice, which shall be by advertisement and all bids shall be filed with the city controller and opened publicly at a time and place to be designated in the notice, and the figures shall be announced to persons present. For competitive bidding on contracts involving an amount of one thousand five hundred dollars, or less the director of the Department of Supplies may obtain oral bids or letter bids or may proceed by comparison of specific prices as set forth in the seller's literature."

The only Ordinance of the Council of the City of which we have notice in this record, and which appears pertinent, is cited in the opinion of the lower court. It is Ordinance No. 168 of 1968 implementing the City Officials' authority to advertise and open bids. It provides as follows:

"An Ordinance—Providing for a contract or contracts for the Renovation of Various City Streets and Park Roads with asphaltic, concrete, or other materials,

including Regrading and Recurbing and for the Laying and Relaying of Water Lines and Appurtenances furnished by the City, and other work incidental thereto, and for the payment of the cost thereof.

"The Council of the City of Pittsburgh hereby enacts as follows:

"Section 1. That the Mayor and the Director of The Department of Public Works and the Director of The Department of Water shall be and they are hereby authorized and directed to advertise for proposals and to award and enter into a contract or contracts for the Renovation of Various City Streets and Park Roads with asphaltic, concrete, or other Materials, including Regrading and Recurbing, and for the Laying and Relaying of Water Lines and Appurtenances furnished by the City, and other work incidental thereto, in accordance with the laws and ordinances governing said City in an amount not to exceed the sum of One Million Three Hundred Thousand Dollars ($1,300,000.00), chargeable to and payable as follows:

"Bond Fund 207, Renovation of Various City Streets and Park Roads   $1,200,000.00
"Code Account 1707—Rehabilitation and Reconditioning of Water System $  100,000.00

$1,300,000.00

"Section 2. That any Ordinance or part of Ordinance conflicting with the provision of this Ordinance, be and the same is hereby repealed so far as the same affects this Ordinance."

The law is clear that the dismissal of preliminary objections is not an appealable order. *See Grosso v. Englert,* 381 Pa. 351, 113 A. 2d 250 (1955); *Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Co.,* 419 Pa. 170, 213 A. 2d 366 (1965); *DeAngelis v. Laughlin,* 436 Pa. 75, 258 A. 2d 615 (1969). These cases hold that a decree dismissing preliminary

objections is interlocutory and therefore unappealable in the absence of statutory authority. The Act of March 5, 1925, P. L. 23, Section 1, 12 P.S. §672, provides an exception to that general rule. That statute reads: "Wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments."[3] In view of the fact that the Preliminary Objections filed by the City question the jurisdiction of the lower court, these questions are properly before us on appeal.

In the case of *Witney v. Lebanon City,* 369 Pa. 308, 311-12, 85 A. 2d 106, 108 (1952), the plaintiff brought a suit in assumpsit to recover contract damages, in reply to which the defendant filed preliminary objections contending that the court lacked jurisdiction inasmuch as the contract contained arbitration provisions and procedures which the plaintiff had failed to follow. In its decision the Supreme Court set forth the guideline to be followed in dealing with preliminary objections questioning the jurisdiction of a court. Justice STERN, speaking for a unanimous court, wrote: "In Zerbe Township School District v. Thomas, 353 Pa. 162, 44 A. 2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its alle-

---

[3] The Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, as amended by the Act of June 3, 1971, P. L.    , Act No. 6, 17 P.S. §211.509(g)(30), repealed those portions of the quoted statute inconsistent with it, but did not effect the exception provided.

gations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of the *general class* to which the case presented for its consideration belonged,— whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case;* that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined."* [citing many cases supporting this proposition in a footnote] (Emphasis in original.) In this appeal the City has raised questions addressed to the merits of the case, some of which might well be the proper subject of preliminary objections in the nature of a demurrer. The City in its brief repeatedly argues that because the Mayor has a discretionary power to determine the "lowest responsible bidder", the lower court is without jurisdiction in a mandamus action. The City's argument fails to distinguish as between (1) the duty of the Mayor to receive and publicly read all duly filed and properly formed bids, and (2) his discretionary power to reject such bids which he determines are not submitted by the lowest responsible bidder.

We agree with the court below that ACI has a sufficient interest in this case to maintain a mandamus action to enforce a public duty on behalf of the Mayor and the Director of Public Works. See *Dombrowski v. Philadelphia,* 431 Pa. 199, 245 A. 2d 238 (1968). The lower court was also correct in holding that the Mayor

and the Director of Public Works had a clear legal duty to receive the bids, to open them and read them aloud. There is nothing in the statute and Ordinance, quoted above, which would authorize the Mayor to institute, by his own initiative, a prequalification procedure under which he could disqualify a prospective bidder. Whether City Council has authorized such a prequalification procedure is not a matter of record.

Although we do not rule on the merits of this case for the obvious reason that we have no record upon which to base such a ruling, we note that the Supreme Court of Pennsylvania has already spoken on the subject of prequalification plans affecting bidders for municipal contracts. *See Harris v. Philadelphia, et al.*, 299 Pa. 473, 149 A. 722 (1930), and *Corcoran v. Philadelphia*, 363 Pa. 606, 70 A. 2d 621 (1950). In the *Harris* case, the Supreme Court pointed out that the statutory provision pertaining to the awarding of contracts through open competitive bidding was to minimize the possibility of favoritism and collusive bidding. The Court noted that the statutory provisions are mandatory and strict compliance must be observed. "They cannot be evaded or disregarded by the City or its officials," said the Court. It then pointed to the fact that City Council is the governmental body with the power to establish a prequalification plan, which must be fair to all prospective bidders. The *Harris* Court stated: ". . . Following all of our cases, therefore, we again lay down the rule that all bidders on a municipal contract must be accorded the same treatment, for not otherwise can the requirements of the statute be complied with. The city may, as heretofore she has done, accept and schedule all bids, and *then,* if acting in good faith, refuse to award the contract to one who is the lowest bidder, because he is not the 'lowest responsible bidder.' Or she may, as she is now attempting to do, determine in advance who are responsible bidders, and refuse to

receive bids from those who, after treating all alike, she determines are not in that class. But she may not impose conditions on one prospective bidder, which are not imposed upon all; nor may she enforce a method by which, through favoritism, one person may be conclusively authorized to bid on a pending contract, while another, equally as responsible and perhaps more so, is wholly excluded from even submitting a bid." (Emphasis added.) 299 Pa. at 480, 149 A. at 724.

In the case of *Travis v. Teter,* 370 Pa. 326, 330-31, 87 A. 2d 177, 179 (1952), the Supreme Court laid down its often-quoted description of the action of mandamus. The Court said: "Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy; [citing cases]. However, even in such cases its issuance is not a matter of right but in certain circumstances is a matter for the sound discretion of the court [citing case]. It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable (citing cases)." (Emphasis included.)

The case of *Volunteer Firemen's Relief Association,* 415 Pa. 305, 311, 203 A. 2d 476, 479 (1970), stands for the further proposition that "in this state mandamus

will lie to compel performance by a public official of a legal duty even if the existence and/or scope of the duty must be found and defined in the mandamus action itself."

Accepting as true all the properly pleaded facts in the Complaint (*McIlvaine v. State Police,* 3 Pa. Commonwealth Ct. 478,     A. 2d     (1971) ; *Williams v. Board of Probation and Parole,* 2 Pa. Commonwealth Ct. 312,     A. 2d     (1971), we view the bidding procedure responsibilities of the Mayor and the Director of Public Works, in the absence of any showing of City Council authorization for a prequalification eligibility list, as two separate and distinct functions. The first is a mandatory ministerial duty to receive and open all bids in proper form and timely filed. The second function involves a duty to exercise discretion to award the contract to the "lowest responsible bidder", or to reject all bids. The discretionary function of the Mayor arises only after the bids have been received and publicly read. We therefore hold that the lower court has both party and subject matter jurisdiction in this mandamus action. The City has failed to support its argument that the lower court is without jurisdiction to hear the case.

The Order of the court below is affirmed.