# Heiges Masonry, Inc. v. Adams County

*Kenneth L. Rotz,* for petitioners.
*John R. White,* for County and Commissioners.
*Donld G. Oyler,* for Mid-Atlantic Services.

SPICER, *P.J.,* November 2, 1981—This is an appeal from a decree nisi entered October 15, 1981, dismissing a request for a preliminary injunction.

Appellants filed their petition on October 13, 1981, requesting a preliminary injunction without a hearing. This court refused to enter such an order and set a hearing instead. Following the hearing, the court entered the order from which the appeal has been taken. The notice of appeal did not order a transcript of the hearing.

Appellants are a corporation and its president. Both engage in the masonry trade and are taxpayers of Adams County. Appellants occasionally clean and seal brick work but generally subcontract such work.

Appellees, who were the respondents in the proceeding before this court, include the County of Adams, all three County Commissioners, and a firm which cleans and seals brick.

The subject of this action is a contract dated October 7, 1981, between the two appellees, the

Commissioners, and Mid-Atlantic Services Corporation. The scope of work covered by the agreement was the cleaning of the brick exterior of the old Adams County Courthouse and the sealing thereof with a mineral base sealant called Hydrozo. Hydrozo is a patented substance but the contract was not for the purchase of the sealant. Rather, it was for the work of cleaning and sealing with Hydrozo.

The Commissioners did not advertise for bids. Apparently, the decision to have the work performed was made at a public meeting, an account of which was reported in a local newspaper. Learning of the decision, the president of Mid-Atlantic contacted the Commissioners. Mid-Atlantic is the only firm in the Adams County area approved by the manufacturer of Hydrozo to apply the sealant. However, it is not difficult to either obtain approval or Hydrozo itself.

The contract price was $16,937.54.

The Commissioners felt justified in awarding the contract without following the bidding procedure mandated by 16 P.S. § 1802 because they determined Hydrozo to be a patented product and the work to be maintenance.

The court ruled that the exceptions in 16 P.S. § 1803(h)(3), relating to patented products, did not apply. That decision is not a subject of this appeal and will not be discussed. Therefore, the only issue pertinent to this appeal is whether § 1802(h)(1) applies. That particular provision exempts from bidding requirements contracts "for maintenance, repairs or replacements for water, electric light or other public works of the county where they do not constitute new additions, extensions or enlargements of existing facilities and equipment."

Appellants conceded at the hearing that the work covered by the contract constituted maintenance.

They vigorously contended that the old Adams County Courthouse was not a "public work." Thus, the issue decided by this court was, indeed, narrow.

The old courthouse building carries the date 1859 on its exterior but it is this court's understanding that it was constructed around 1854. It housed our entire county government, except the jail, until a few years ago when first, several offices were moved to other buildings and, second, the present Courthouse was constructed. The old courthouse continues to be utilized for public purposes, however. This court uses the old courtroom for ceremonial purposes. Several county offices are housed within the structure and there is an office on the second floor for Commonwealth Court Judge John A. MacPhail.

This court held that the old courthouse was a public work and dismissed appellants' petition.

Appellants were unable to cite any authority holding that a building is not a public work within the purview of section 1802(h)(1). Instead, they argued first, that advertising requirements should be broadly and liberally applied and second, the term "public works" takes its meaning from other words in the subsection. They point out that water and electric light connotes services while building does not.

Although the meaning of "public works" is a matter of statutory construction, the general definition means "all works constructed for public use, protection or enjoyment ordinarily of a fixed nature." Included are "[s]uch buildings, structures and other works which by statute are authorized to be constructed for public purposes by the state or public agencies therein." 64 Am Jur 2d Public Works and Contracts, § 1.

Definitions in other statutes, some of which have been incorporated in section 1802 by reference, also

define public works as including buildings. For example, section 1802(5)(i) provides that every construction, reconstruction, alteration, repair improvement or maintenance of public works must comply with the provisions of the Steel Products Procurement Act, 73 P.S. § 1881 et seq. The latter Act, as does the Trade Practices Act, 71 P.S. § 773.101 et seq. defines public works as including buildings.

Thus, there is strong argument that the ordinary meaning of the phrase must be adopted and buildings included: 1 Pa.C.S.A. § 1903(a).

The only argument advanced by appellants prior to and after the hearing was that the provisions of section 1802(h)(1) conflict with those of section 1802(5)(i) and the more restrictive meaning must be followed, citing 1 Pa.C.S.A. § 1933. Appellants did not cite authority for their proposition that the subsections must be read differently. No exceptions have been filed to the decree nisi and we have not had the benefit of further argument and research provided by counsel directed at the very narrow issue refined by the hearing.

Appellants were apparently relying on the doctrine of ejusdem generis, which is embodied in the provisions of 1 Pa.C.S.A. § 1903(b). That provision reads as follows:

General words shall be construed to take their meanings and be restricted by preceding particular words.

The rule is one of statutory construction and has been discussed by many authorities. Included are the following:

General and specific words in a statute which are associated together, and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense

analogous to the less general. Similarly, in accordance with what is commonly known as the rule of ejusdem generis, where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation, and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated. In accordance with the rule of ejusdem generis, such terms as "other," "other thing," "other persons," "others," "otherwise," or "any other," when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described (footnotes omitted): 73 Am Jur 2d Statutes, §214.

It is further provided:

The doctrine of ejusdem generis is not a positive rule of law but a rule of construction to aid in ascertaining and giving effect to the legislative intent where there is uncertainty, and does not warrant the court in subverting or defeating the legislative will by confining the operation of a statute within narrower limits than intended by the lawmakers. If, on consideration of the context and whole law upon the subject, and the purposes sought to be effected it is apparent that the legislature intended the general words to go beyond the class specially designated, the rule does not apply. Moreover, the rule of ejusdem generis does not apply to restrict the operation of a general expression where the specific things enumerated have no common characteristic: Id. §215.

Appellants argued that phrases "water" and "electric light" connote services. Thus, their argument was that only facilities associated with activity

such as the providing of water or electricity can qualify for the definition of public works.

We could find no holding that interpreted the subsection so narrowly. We do not believe that "water" and "electric light" share common characteristics despite appellants' argument. While "water" can be affixed to "works" to obtain a commonly used word, "waterworks," the same is not true of "electric light." In fact, this court is not sure what the legislature meant to include in "electric light."

The Supreme Court apparently assumed that ejusdem generis did not restrict the meaning of "public improvements" in Dolan et al. v. Schoen, 261 Pa. 11 (1918). In that case, the court considered work that had been done to the Pottsville City Hall. The work was done without advertising. The statute, then in force provided an exception to advertising requirements for "ordinary repairs of highways and sewers and other public improvements." The court said at pages 14 and 15:

The claims cannot be sustained under the exception as to ordinary repairs, for the chancellor properly finds that the improvements in question were not ordinary repairs.

Surely, we think the Supreme Court would not have even discussed the exception had it not been possibly applicable. If the doctrine of ejusdem generis had restricted the meaning of public improvements to the same class as highways and sewers, neither the chancellor nor the Supreme Court would have taken the trouble to decide if remodelling a city hall constituted an ordinary repair. Further, we can see more common characteristics shared by highways and sewers than shared by water and electric lights.

Ther term "public works" is used twice in §1802.

The first usage occurs in the advertising exception and the second in an amendment enacted in 1978. This amendment was part of a comprehensive approach by the legislature resulting in the Steel Products Procurement Act, supra, and The Trade Practice Act, supra. Were a conflict to be found between the provisions of § 1802(h)(1) and § 1802 (5)(i), we think the provisions of § 1802(5)(i) would prevail: 1 Pa.C.S.A. § 1933.

However, we do not find a conflict to exist. Rather, it appears reasonable to us that the General Assembly meant to incorporate the definition of "public works" contained in the Steel Products Procurement Act, supra, and that the phrase always included public buildings.

In our opinion, that is a much more satisfactory means of interpretation than trying to interpret, first the meanings of rather obscure phrases such as "electric light" and then to apply those interpretations to obtain other interpretations.

This opinion is written to conform with Rule of Appellate Procedure 1925.